[Cite as *Warden v. Ohio Dept. of Natural Resources*, 2014-Ohio-35.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Richard Warden, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | No. 13AP-137 |
| v. | | (Ct. of Cl. No. 2011-1232) |
| | : | |
| Ohio Department of Natural Resources, | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

---

D E C I S I O N

Rendered on January 9, 2014

---

*Mowery Youell & Galeano, Ltd.*, and *Merl H. Wayman*, for appellee/cross-appellant.

*Michael DeWine*, Attorney General, *Randall W. Knutti* and *Emily M. Simmons*, for appellant/cross-appellee.

---

APPEAL from the Court of Claims of Ohio

O'GRADY, J.

{¶ 1} Defendant-appellant/cross-appellee, Ohio Department of Natural Resources ("ODNR"), and plaintiff-appellee/cross-appellant, Richard Warden, appeal from a judgment of the Court of Claims of Ohio finding ODNR liable for age discrimination under R.C. Chapter 4112 and awarding Warden damages. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this decision.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Warden is a registered professional engineer who ODNR employed for 29.5 years.  In October 2006, at the age of 51, Warden accepted a two-year buyout and retired from his position as a Natural Resources Engineer 4 in the Mineral Resources Management ("MRM") division at ODNR.  Subsequently, the General Assembly enacted legislation that required ODNR to prepare an estimate of the cost to reclaim coal mining sites if the coal mining operator forfeited.  To comply with the legislation, the MRM division had to create a program that could perform the estimates.  In 2007, MRM Division Chief John Husted asked Warden to resume employment with ODNR on an intermittent basis to develop the required program.  Warden agreed and worked under four, 1,000-hour contracts as an Engineer 4.  His last contract with ODNR ended in June 2010.

{¶ 3}   In 2009, MRM division officials began to discuss creating a full-time Natural Resources Engineer 3 position to perform the work Warden was performing under his intermittent assignments.  Husted and Susan Grant, Warden's immediate supervisor, asked Warden if he would be interested in the position.  Warden informed Grant that he was.

{¶ 4}   In early 2010, ODNR posted the full-time Engineer 3 position, and Warden applied for it.  He received the highest overall score of the interviewed applicants.  After the interview, Husted told Warden it was not likely ODNR would select Warden because he was a retiree.  Grant and Lanny Erdos, a deputy chief at ODNR, told Warden he would not be selected because the administration would not allow an individual who retired from the agency to be rehired into another full-time position.  Ultimately, ODNR hired Jared Knerr, age 39, for the position.  At the time, Warden was age 54.

{¶ 5}   In January 2011, Warden filed a complaint in the Court of Claims of Ohio alleging a claim of age discrimination under R.C. 4112.14 and 4112.99 against ODNR.  The matter proceeded to a bench trial on the issue of liability.

{¶ 6}   ODNR claimed it did not hire Warden for the Engineer 3 position because of a policy that generally prohibited rehiring retired former employees in the same or similar position to that which they retired from and that age was not a factor in the decision.  Former ODNR Director Sean Logan testified he instituted the policy to prevent the practice pejoratively referred to as "double-dipping," i.e., being paid retirement

benefits plus a salary for performing the same or similar job from which the employee retired. Logan testified double-dipping creates a "distrust with the public," and, in his opinion, to retire means to leave the position. (R. 113, Apr. 4, 2012 Decision at 5.) Additionally, Logan testified about an "exceptional circumstances" exception to the general policy on rehiring retirees. Under this exception, ODNR hired a 55-year-old retiree, Thomas Tugend, to a similar position from which he retired. Logan admitted he never issued a directive to memorialize the policy against rehiring retired former employees or a directive to distribute the policy to the division chiefs or human resources staff. However, ODNR Human Resources Director Steve Bates did draft a memorandum which states in part that "[t]he re-employment of State of Ohio/Public Employer Retirees will be strictly limited to intermittent positions that require specialized knowledge and/or experience." (Decision at 5.)

{¶ 7} According to Logan, ODNR Assistant Director Richard Milleson advised him a retiree was going to be recommended for the Engineer 3 position. Logan told Milleson, "they probably need to look harder." (Dec. 28, 2011 Tr. 182.) Logan admitted he did not discuss the specific position duties for the Engineer 3 position when presented with the possibility of hiring a retiree for the job. Logan did testify that fulfillment of the Engineer 3 position did not have the same level of urgency as the fulfillment of Tugend's position.

{¶ 8} Mamie Hollenback, a former ODNR human resources associate, testified that, after she set up Warden's interview, her supervisor told her ODNR could not rehire a retiree. Hollenback claimed she told Warden's interview panel, before they even met with Warden, they could not hire him based on his retiree status. However, the panel members claimed that before the interview, they were unaware of a policy prohibiting rehiring retirees to the same or similar position and were unaware of the Bates memorandum. The panel members testified they either did or would have recommended Warden for the Engineer 3 position; but, Erdos told one of the panel members the panel needed to consider the other applicants because ODNR could not rehire Warden. Erdos claimed Milleson advised him ODNR could not rehire a retired former employee. Erdos testified he never saw the Bates memorandum and was unaware of a policy prohibiting rehiring former retired employees. Husted also testified about his lack of knowledge of a

policy on retirees or the memorandum. According to Husted, Milleson told him ODNR did not want to hire Warden because he was a retiree.

{¶ 9} The Court of Claims determined ODNR was not liable under the disparate treatment theory of age discrimination but was liable under the disparate impact theory. After a trial on the issue of damages, the Court of Claims entered a judgment in favor of Warden in the amount of $507,656.75.

## II. ASSIGNMENTS OF ERROR

{¶ 10} ODNR appeals and presents this court with three assignments of error for our review:

> [1.] Because Mr. Warden failed to prove his disparate-treatment claim, the trial court erred by denying ODNR's Rule 41(B)(2) motion to dismiss the case.
>
> [2.] The trial court erred by finding ODNR liable on a disparate-impact claim that was never pled, litigated or proven.
>
> [3.] The Court of Claims erred by awarding Mr. Warden damages to which he was plainly not entitled.

{¶ 11} Warden cross-appeals and presents this court with three cross-assignments of error for our review:

> 1. The lower court erred in its April 4, 2012 Decision and Judgment Entry by concluding there was no direct evidence of age discrimination when Appellant/Cross-Appellee, Ohio Department of Natural Resources ("ODNR") relied on a policy and practice of prohibiting the rehire of retired employees over 40 years of age to reject Warden for the Natural Resources Engineer 3 positiin [sic].
>
> 2. The lower court erred in its April 4, 2012 Decision and Judgment Entry by concluding that Warden failed to establish pretext of age discrimination on his disparate treatment claim when their [sic] was evidence that ODNR's reasons not to hire him was [sic] a proxy for age discrimination.
>
> 3. The lower court erred in its January 15, 2013 Decision and Judgment Entry by limiting Warden's recovery of his tax liability against his back pay award, instead of against both his back pay and front pay awards.

{¶ 12} For ease of analysis, we will address the assignments of error and cross-assignments of error out of order.

## III.  DISCUSSION

A.  *Civ.R. 41(B)(2) Motion to Dismiss*

{¶ 13} In its first assignment of error, ODNR contends the Court of Claims erred when it denied ODNR's motion to dismiss because Warden failed to prove disparate treatment age discrimination occurred.

{¶ 14} Civ.R. 41(B)(2) provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.  *The court as trier of the facts* may then determine them and render judgment against the plaintiff or *may decline to render any judgment until the close of all the evidence.*

(Emphasis added.)

{¶ 15} After Warden rested his case-in-chief in the liability phase of trial, ODNR moved for dismissal under Civ.R. 41(B)(2).  ODNR argues it was entitled to dismissal at that time because Warden offered no evidence on what ODNR contends was the only issue before the Court of Claims—whether the policy against double-dipping was merely a pretext for disparate treatment age discrimination.  After ODNR made the motion, the Court of Claims stated: "I'm uncomfortable at this point because I'm not sure that I totally agree with [ODNR], although I think you've got good points, but I'm going to hear your evidence."  (Dec. 28, 2011 Tr. 168.)  Although the Court of Claims ultimately rejected Warden's disparate treatment claim, ODNR essentially claims the Court of Claims erred when it opted to hear ODNR's evidence rather than granting ODNR's motion immediately after Warden rested his case-in-chief.

{¶ 16} However, Civ.R. 41(B)(2) expressly authorized the trial court to "decline to render any judgment until the close of all the evidence."  Thus, the Court of Claims did not

err when it declined to rule on ODNR's motion at the close of Warden's case-in-chief and proceeded to hear further evidence. *Fairbanks Mobile Wash, Inc. v. Hubbell*, 12th Dist. No. 2007-05-062, 2009-Ohio-558, ¶ 77; *Pacher v. Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, ¶ 34 (2d Dist.). Although the parties also argue about the Court of Claims' ultimate finding that ODNR did not engage in disparate treatment age discrimination, we will address that issue under other assignments of error. Accordingly, we overrule ODNR's first assignment of error.

B. *Liability for Age Discrimination*

{¶ 17} R.C. 4112.14(A) provides:

> No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

Under R.C. 4112.14(B), "[a]ny person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of [R.C. 4112.14] may institute a civil action against the employer in a court of competent jurisdiction." *See also* R.C. 4112.99. "In deciding cases brought under R.C. 4112.14[,] * * * Ohio courts may rely on federal anti-discrimination case law." *Tilley v. Dublin*, 10th Dist. No. 12AP-998, 2013-Ohio-4930, ¶ 21, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 582 (1996).

{¶ 18} "A plaintiff in a discrimination lawsuit may pursue 'essentially, two theories of employment discrimination: disparate treatment and disparate impact.' " *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 14, quoting *Albaugh v. Columbus Div. of Police*, 132 Ohio App.3d 545, 550 (10th Dist.1999) ("*Albaugh I*"), citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). *See Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶ 57, 63 (recognizing both theories in an age discrimination claim brought under R.C. Chapter 4112). "Disparate treatment is the most easily understood type of discrimination; the employer simply treats some people less favorably than others because of their race, color, or other protected characteristics." *Albaugh I* at 550, citing *Hazen Paper* at 609. "In a disparate

treatment case, liability depends upon whether the protected trait actually motivated the employer's decision." *Id.*, citing *Hazen Paper* at 610. Thus, to prevail on a disparate treatment age discrimination claim, the plaintiff must prove discriminatory intent. *Davenport v. Bur. of Workers' Comp.,* 10th Dist. No. 01AP-827, 2002-Ohio-2768, ¶ 29, citing *Mauzy* at 583.

{¶ 19} In contrast, "[d]isparate impact discrimination involves employment practices that are facially neutral in their treatment of different groups, but fall more harshly on one group." *Brown v. Worthington Steel, Inc.*, 10th Dist. No. 05AP-01, 2005-Ohio-4571, ¶ 8, citing *Albaugh v. Columbus, Div. of Police*, 10th Dist. No. 02AP-687, 2003-Ohio-1328, ¶ 11 ("*Albaugh II*"). "Proof of discriminatory motive is not required under this theory of discrimination." *Albaugh II* at ¶ 11.

### 1. Disparate Treatment

{¶ 20} Warden's first and second cross-assignments of error challenge the propriety of the Court of Claims' finding that he did not prove disparate treatment age discrimination. In effect, Warden asserts the judgment on his disparate treatment claim is against the manifest weight of the evidence. *See Refaei v. Ohio State Univ. Hosp.*, 10th Dist. No. 10AP-1193, 2011-Ohio-6727, ¶ 9 (interpreting employee's argument that Court of Claims improperly resolved his claim of hiring discrimination as a manifest weight of the evidence argument).

{¶ 21} " Civil '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 17, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct." *Stanley* at ¶ 18, citing *Seasons Coal Co.* at 79-80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to

view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.* at 80.

{¶ 22} Under his first cross-assignment of error, Warden contends the Court of Claims erred when it concluded he did not present direct proof of disparate treatment age discrimination. An employee "may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy* at paragraph one of the syllabus.

{¶ 23} Warden contends at the liability trial, he argued Logan's testimony and the Bates memorandum constituted direct evidence of age discrimination. The Court of Claims found Logan testified the decision to not hire Warden was "motivated by a desire to restrict the hiring of recently retired former employees and that [Warden's] age was not a consideration." (Apr. 4, 2012 Decision at 4.) The Court of Claims noted the Bates memorandum referred to "re-employment of State of Ohio/Public Employer Retirees" but did not reference age as a factor for the policy, and that Warden failed to present direct evidence of age discrimination. (Decision at 4.)

{¶ 24} Warden complains the Court of Claims did not address his argument that he provided direct evidence based on the Supreme Court of Ohio's holding in *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501 (1991). In *Kohmescher*, a divided court reversed a court of appeals' judgment affirming a trial court's decision to grant an employer summary judgment in an age discrimination case. The Supreme Court found the employee presented "what can be characterized as direct evidence of age discrimination sufficient to overcome [the employer's] motion for summary judgment." *Id.* at 504. Specifically, there was evidence a supervisor stated he recommended the employer eliminate the employee's position because he was "eligible for (the) retirement window." *Id.*

{¶ 25} However, as the Seventh District Court of Appeals has explained, "*Kohmescher* was decided on summary judgment, which entitled the plaintiff-employee, as the nonmoving party, to have the evidence construed most strongly in his favor in deciding whether a genuine issue of material fact existed sufficient to defeat summary judgment, entitling him to a trial." *Kightlinger v. McGee*, 7th Dist. No. 12 BE 9, 2012-Ohio-5295, ¶ 32, citing Civ.R. 56(C) and *Link v. Leadworks Corp.*, 79 Ohio App.3d 735,

741 (8th Dist.1992). "Simply because the plaintiff in *Kohmescher* was entitled to a trial because reasonable minds could come to more than one conclusion in light of conflicting evidence and testimony * * * does not mean that the plaintiff was entitled to prevail at trial." *Id.* at ¶ 32, citing *Kohmescher* at 506. As in *Kightlinger*, there was a trial in this case, and "the trial court heard testimony and evidence from both sides, and issued a conclusion based upon its own observations and determination of the credibility of the witnesses without any requirement to view the evidence in a favorable manner to appellant." *Id.* at ¶ 32. Thus, we find *Kohmescher* is not controlling in the case at hand. *See id.*

{¶ 26} "It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Hazen Paper* at 610. "When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears." (Emphasis sic.) *Id.* at 611. Therefore, there is no disparate treatment when the factor motivating the employer is some feature other than the employee's age. *See Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 53 (quoting with approval in an R.C. Chapter 4112 case the *Hazen Paper* court's similar statement on Age Discrimination in Employment Act of 1967 ("ADEA") claims).

{¶ 27} There is a correlation between age and retirement status. In fact, as Warden points out, in ruling on the issue of disparate impact liability, the Court of Claims found ODNR's policy on retirees "impacts only those prospective employees who are over the age of forty." (Apr. 4, 2012 Decision, at 9.) Nonetheless, the fact that "retirees" for purposes of ODNR's policy may be over age 40 did not obligate the Court of Claims to conclude ODNR more likely than not was motivated by a discriminatory intent when it instituted the policy and did not hire Warden under it. Through Logan's testimony, ODNR offered evidence that the retiree policy was motivated by a desire to prevent double-dipping as opposed to inaccurate and stigmatizing stereotypes about older workers. Thus, competent, credible evidence supports the Court of Claims' finding that Warden did not provide direct evidence of disparate treatment age discrimination. We overrule Warden's first cross-assignment of error.

{¶ 28} Under his second cross-assignment of error, Warden contends the Court of Claims erred when it concluded he failed to establish disparate treatment age discrimination in his indirect proof case.

{¶ 29} "Absent direct evidence of age discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as adopted by Supreme Court of Ohio in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), and modified in *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723." *Mittler* at ¶ 19; *Tilley* at ¶ 22. First, the plaintiff must establish a prima facie case. *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 26. To do so, the plaintiff must demonstrate by a preponderance of the evidence that he or she: (1) was a member of the statutorily protected class, (2) suffered an adverse employment action, e.g., was not hired for a position for which the employee applied, (3) was qualified for the position, and (4) the position was awarded to a person of substantially younger age. *Id.*, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, paragraph one of the syllabus, modifying and explaining *Kohmescher* at syllabus. The Court of Claims found, and the parties do not dispute, that Warden established a prima facie case of disparate treatment under the indirect method of proof.

{¶ 30} If the plaintiff establishes a prima facie case, there is a presumption of age discrimination. *Id.* at ¶ 27. "The burden of production then shifts to the defendant-employer to overcome the presumption by coming forward with evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*, citing *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 11. The Court of Claims found, and the parties do not dispute, that ODNR presented evidence of a legitimate, nondiscriminatory reason for the adverse employment action, i.e., the policy on rehiring retirees.

{¶ 31} Next, "the burden shifts back to the plaintiff to prove that the employer's stated reasons were not its true reasons, but merely a pretext for unlawful discrimination." *Id.* at ¶ 27, citing *Crase* at ¶ 11. To establish pretext, the plaintiff must demonstrate the proffered reason " '(1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged

conduct.' " *Id.* at ¶ 28, quoting *Knepper v. The Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 12. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Knepper* at ¶ 12, citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). The plaintiff always has the ultimate burden of persuading the trier of fact the defendant intentionally discriminated against him. *Tilley* at ¶ 26, quoting *Ohio Univ. v. Ohio Civ. Rights Comm.*, 175 Ohio App.3d 414, 2008-Ohio-1034, ¶ 67 (4th Dist.), quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

{¶ 32} Here, the Court of Claims found Warden failed to prove ODNR's reason for not hiring him was a pretext for intentional age discrimination. The Court of Claims was convinced by the testimony of various ODNR employees that Warden was "not hired solely because of his status as a retired former employee." (Apr. 4, 2012 Decision, at 8.) The Court of Claims also found that "[a]lthough the Bates memorandum was not widely publicized and the position from which [Warden] retired was not the same position for which he applied, Logan credibly testified that the reason why [Warden] was not hired for the position was because of his status as a retired former employee." (Apr. 4, 2012 Decision, at 8.)

{¶ 33} Warden challenges the Court of Claims' conclusion that he failed to establish ODNR's reason for not hiring him—his retiree status—constituted a pretext for discrimination. Initially, Warden argues ODNR's stated reason was a proxy for age discrimination. Although Warden frames the assigned error around the issue of pretext, it is unclear how this argument fits into any of the three types of pretext showings. Warden suggests ODNR's legitimate, nondiscriminatory reason for not hiring him is itself evidence of pretext due to the relationship between retirement status and age. This argument appears similar to the one Warden advanced, and we rejected, under his first cross-assignment of error.

{¶ 34} Warden cites *Hazen Paper* for the proposition that "the United States Supreme Court stated that a claim for age discrimination may be established when an employer targets an employee with a particular pension status on the assumption that the employee is likely to be older." (Cross-Appellant's brief, at 22.) Warden then attempts to

compare this case to the Seventh Circuit's decision in *Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (7th Cir.1987), and the Ninth Circuit's decision in *E.E.O.C. v. Local 350, Plumbers & Pipefitters*, 998 F.2d 641 (9th Cir.1992). Both cases involved actions under the ADEA.

{¶ 35} The *Metz* court "held that it was age discrimination for an employer to discharge an older employee and replace him with a younger employee to reduce salary costs." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1994). But the Seventh Circuit recognized after it decided *Metz* "a unanimous Supreme Court" decided *Hazen Paper*, which "vindicate[d] the dissent in *Metz.*" *Id.* The *Anderson* court explained the correlation between compensation and age is not perfect and found the employee in the case before it could not prove age discrimination even if he was fired simply because the employer desired to reduce salary costs. *Id.* at 1126. Thus, the Seventh District effectively overruled *Metz,* and Warden's reliance on that case is misplaced.

{¶ 36} In *Local 350*, the E.E.O.C. brought suit to challenge a union's policy of refusing to allow retired members to seek work through the union's hiring hall while the members continued to receive pension benefits. The Ninth Circuit reversed the district court's grant of summary judgment in favor of the union. The Ninth Circuit found the union's policy discriminated on the basis of age because "[o]n its face, it discriminates only against retired employees; however, only employees 55 or older are eligible to retire." *Local 350* at 646. Because *Local 350* was a summary judgment case, we find it unpersuasive for the same reasons we found the Supreme Court of Ohio's decision in *Kohmescher* did not control in this case.

{¶ 37} Next, Warden argues ODNR's reason for not rehiring him constituted a pretext for age discrimination because the reason was insufficient to warrant rejection of his application. In other words, he claims he made the third type of pretext showing. Warden contends he can make this showing through "evidence that other employees are treated more favorably who are not in the protected class." (Cross-Appellant's brief at 27-28.) Warden argues ODNR treated Knerr, a younger employee, more favorably than him despite the fact that Knerr had lower interview scores and did not have any reclamation experience.

{¶ 38} In the context of firing decisions, we have previously explained that the third type of pretext showing " 'ordinarily, consists of evidence that other employees,

particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.' " *Mittler* at ¶ 47, quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds* as recognized by *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir.2009). That is, if an employer claims it fired the protected class member for certain misconduct, but the employer did not fire a person outside the class for essentially the same conduct, the fact finder could infer the misconduct was not the real motivation for the discharge. By logical extension, in the hiring context, the plaintiff-employee could make the third pretext showing through evidence other applicants, particularly ones not in the protected class, were hired even though they engaged in the same conduct or had the same characteristic the employer identified as its reason for not hiring the plaintiff-employee.

{¶ 39} Here, ODNR did not hire Warden because he was a retired former employee. The fact ODNR hired a non-retired applicant for the Engineer 3 position does not show ODNR's reason for rejecting Warden was insufficient. Knerr's hiring does not conclusively prove ODNR declined to hire Warden because of his age as opposed to his retiree status and ODNR's general desire to prevent double-dipping.

{¶ 40} Some competent, credible evidence supports the Court of Claims' conclusion Warden failed to prove pretext and the Court of Claims' implicit conclusion he failed in his ultimate burden to prove ODNR intentionally discriminated against him because of his age. Admittedly, ODNR did not widely publicize its policy on rehiring retirees. In addition, there is conflicting evidence on the full extent of that policy, i.e., whether it applied to retirees seeking the same or a similar position to the one from which they retired or applied to any retiree seeking full-time employment. Nonetheless, the Court of Claims was free to believe Logan's testimony that the motivation for the retiree policy was not age but a desire to prevent double-dipping. ODNR did hire a younger employee for the Engineer 3 position who did not have the experience or interview scores Warden had. But, the fact that ODNR hired Warden under four separate contracts after he retired, Warden was actually working under one of those contracts when he applied for the Engineer 3 position, and ODNR hired Tugend to a full-time position despite his age

and retirement status, suggest ODNR's hiring decision in this case was not motivated by inaccurate and stigmatizing stereotypes about age.

{¶ 41} Because the Court of Claims' decision was not against the manifest weight of the evidence, we overrule Warden's second cross-assignment of error.

### 2. Disparate Impact

{¶ 42} In its second assignment of error, ODNR contends the Court of Claims erred when it found ODNR liable for disparate impact age discrimination. ODNR argues Warden failed to plead, litigate or prove a disparate impact claim. We agree.

{¶ 43} To establish a prima facie case of disparate impact age discrimination, the plaintiff "must begin by identifying the specific employment practice that is challenged and that is allegedly responsible for any observed statistical disparity." *Albaugh II* at ¶ 11, citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989), superseded by statute as to Title VII claims but not ADEA claims as explained in *Smith v. Jackson, Miss.*, 544 U.S. 228, 240 (2005). Then, the plaintiff must show the practice caused the alleged discrimination. *Albaugh II* at ¶ 11, quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988), and citing *Dunnigan v. Lorain*, 9th Dist. No. 02CA008010, 2002-Ohio-5548, ¶ 18. Once the plaintiff sets forth a prima facie case, the defendant-employer has the burden to show a business justification for the challenged practice. *Id.*, citing *Wards Cove* at 659. If the defendant succeeds, the plaintiff " has the opportunity to show that another policy or practice, without a similarly undesirable effect, would also equally serve the employer's legitimate business interests." *Id.*, citing *Wards Cove* at 660-61.

{¶ 44} Because Ohio is a notice-pleading state, "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 29. "Notice pleading under Civ.R. 8(A)(1) and (E) requires that a claim concisely set forth only those operative facts sufficient to give 'fair notice of the nature of the action.' " *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 20, quoting *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 13. Even under these liberal pleading requirements, Warden's complaint fails to give fair notice of an action for disparate impact age discrimination. His complaint makes no allegations that ODNR has a facially neutral employment practice that falls more harshly on a protected class than others. Instead, the clear focus of

Warden's complaint is a disparate treatment age discrimination claim, i.e., ODNR intentionally discriminated against him because of his age.  In his motion for summary judgment, Warden only focused on the analysis for a disparate treatment claim and made no mention of a disparate impact claim, suggesting even Warden did not view his complaint as containing a disparate impact claim.  Thus, we agree Warden failed to plead a disparate impact claim.

{¶ 45} Moreover, we agree Warden did not litigate a disparate impact claim. Instead, Warden's focus throughout the liability phase of the proceedings remained on disparate treatment age discrimination.  In his opening statement at the liability trial, ODNR's counsel stated Warden "has alleged that [ODNR] had refused to rehire him on the basis that his age was a sole motivating factor in the decision to reject him for rehiring." (Dec. 28, 2011 Tr. 9.)  Counsel characterized the focus of the trial as being "to determine whether the reasons offered by the agency are pretextual; that is, are not the real reasons, but are a cover-up for discriminating against my client on the basis of his age." (Tr. 10.)  Later, when ODNR made its Civ.R. 41(B)(2) motion, Warden's arguments against the motion focused on disparate treatment issues—pretext and whether the Bates memorandum constituted direct evidence of age discrimination.  Warden's counsel only mentioned the phrase "disparate impact" once, and immediately corrected himself and clarified he was speaking of "an example of disparate treatment against my client."  (Tr. 164.)  Moreover, in his post-liability trial brief in support of closing argument, Warden never mentioned a disparate impact claim or argued about how the evidence at trial established a prima facie case of such a claim.  Instead, he focused solely on disparate treatment age discrimination.

{¶ 46} ODNR next argues Warden failed to establish a prima facie case.  We interpret this argument as an attack on the sufficiency of the evidence to support the trial court's judgment.  Sufficiency is " ' "a term of art meaning that legal standard which is applied to determine whether * * * the evidence is legally sufficient to support the [trier of fact's] verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). " ' "The standard for review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party." ' " *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 20, quoting *In re A.E.,* 10th Dist. No. 07AP-685, 2008-Ohio-1375, ¶ 24, quoting *Brooks-Lee v. Lee,* 10th Dist. No. 03AP-1149, 2005-Ohio-2288, ¶ 19. " ' "In other words, is the verdict one which could reasonably be reached from the evidence?" ' " *Id.*

{¶ 47} In its April 4, 2012 decision, the Court of Claims found Warden "identified defendant's policy prohibiting the rehiring of retired former employees to the same or similar position as the potentially offensive employment practice." (Decision, at 9.) The Court of Claims took note of former R.C. 145.32, which provided, in part, that a member of the Ohio Public Employees Retirement System may file an application for retirement if the member: (1) has 5 or more years of total service credit and has attained age 60, (2) has 25 or more years of total service credit and has attained age 55, or (3) has 30 or more years of total service credit at any age. The current version of the statute maintains these retirement requirements. As a general rule, the Court of Claims found individuals under age 14 cannot work in Ohio. Thus, the Court of Claims found ODNR's practice "impacts only those prospective employees who are over the age of forty" and Warden established a prima facie case. (Apr. 4, 2012 Decision at 9.) The Court of Claims further found ODNR failed to prove its policy was based on a reasonable factor other than age and determined ODNR was liable for disparate impact age discrimination.

{¶ 48} ODNR filed a motion for reconsideration. It complained, in part, about the lack of statistical proof to support a disparate impact claim. In denying the motion, the Court of Claims found:

> [I]n its April 4, 2012 decision, the court concluded that based upon the evidence presented at trial, defendant's policy prohibiting the rehiring of formerly employed retirees only affects individuals over the age of forty. Indeed the evidence established that defendant's policy prohibited the rehiring of all retired former employees, unless an exception was granted

> by then-director Sean Logan. Presentation of statistics to demonstrate the impact of such a policy is unnecessary.

(R. 121, June 26, 2012 Entry, at 2.)

{¶ 49} Initially, we note that, in the April 4 2012 decision, the Court of Claims characterized the employment practice Warden challenged as a policy that prohibits rehiring retired former employees to the same or similar position from which they retired. But in denying the motion for reconsideration, the Court of Claims stated the "evidence established" ODNR's policy "prohibited the rehiring of all retired former employees" unless Logan made an exception. (June 26, 2012 Entry, at 2.) ODNR does not challenge the Court of Claims' finding that Warden identified a specific employment practice as part of his prima facie case despite the lack of clarity as to what the Court of Claims found that policy actually was.

{¶ 50} Instead, ODNR argues Warden failed to prove the policy caused a disparate impact on persons age 40 and over. Specifically, ODNR claims it is "not enough for a plaintiff in a disparate-impact case to demonstrate that a policy affects more people in one class than another. A disparate-impact plaintiff must prove that the effect is significant." (Appellant's brief, at 19.) ODNR complains Warden only presented evidence the policy at issue affected two people—Tugend and himself, and the policy only adversely impacted Warden because ODNR still hired Tugend.

{¶ 51} The evidence in a disparate impact case "usually consists of statistical disparities, rather than specific incidents, and on the competing explanations for such disparities." *Albaugh I* at 551, citing *Watson* at 987. We have previously stated " 'the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused' the alleged discrimination." *Albaugh II* at ¶ 11, quoting *Watson* at 994, and citing *Dunnigan* at ¶ 18. "[S]tatistical disparities must be sufficiently substantial that they raise * * * an inference of causation." *Watson* at 995. Nonetheless, "[t]his court is aware that statistical evidence is not to be considered in a vacuum as the only evidence allowing a plaintiff to meet his prima facie case." *Brown* at ¶ 11.

{¶ 52} Warden contends ODNR's policy had a significant impact on "all current and prospective state government retirees who were over forty years of age." (Appellee's brief, at 17.) Warden argues "federal courts have held that a court may, in appropriate cases, project a disparate impact from non-statistical evidence." (Appellee's brief, at 18.) He appears to suggest this is such a case because the Court of Claims found the policy at issue can only affect people over age 40.

{¶ 53} The fact that ODNR's policy *theoretically* could only impact members of a protected class is not sufficient to prove a disparate impact claim. *See generally Rollins v. Clear Creek Independent School Dist.*, S.D.Tex. No. G-06-081, 2006 WL 3302538 (Nov. 13, 2006) (Finding while school district's policy to not renew contracts of rehired, retired teachers "theoretically *could* cause a disparate impact on retired workers who are members of the protected class," plaintiff failed to present evidence that older teachers "actually were disparately impacted" by the policy. (Emphasis sic.)). Here, the evidence shows only two retired former employees applied for positions at ODNR after Logan instituted the policy—Warden and Tugend. ODNR rehired Tugend, a retiree older than Warden, so the policy only prevented one person in the protected age group—Warden— from being rehired. In effect, Warden established the policy had an adverse impact on a single person in the protected statutory class—himself.

{¶ 54} But, "[a]n adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 121 (3d Cir.1983), citing *Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 194 (3d Cir.1979), citing *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409 (8th Cir.1975), and *Robinson v. City of Dallas*, 514 F.2d 1271 (5th Cir.1975); *Holt v. Gamewell Corp.*, 797 F.2d 36, 38 (1st Cir.1986); *see generally Dunlap v. Tennessee Valley Auth.*, 519 F.3d 626, 630 (6th Cir.2008) (finding employee did not present prima face case of disparate impact race discrimination in employer's hiring process where employee did not present evidence "the practices used in his interview were ever used for other hiring decisions, so no statistical proof can show that a protected group was adversely impacted."). Similarly, we have held "[s]mall or incomplete data sets and inadequate

statistical techniques are insufficient to establish" a prima facie claim of disparate impact discrimination. *Brown* at ¶ 12, citing *Watson* at 996-97.

{¶ 55} Warden argues "[s]ome courts have allowed disparate impact claims to go forward without statistical evidence where the sample size is small and where the small size is caused, at least in part, by the employer's own conduct."  (Appellee's brief, at 18.)  Warden claims he applied for the Engineer 3 position "only eleven months" after ODNR instituted its policy and that he was the first former retired employee ODNR rejected under it.  (Appellee's brief, at 18.)  Warden then complains ODNR kept the policy secret, and argues that because ODNR did not publicize the policy "no prospective state government retired employee had the opportunity to learn that the policy prevented them from holding employment at ODNR."  (Appellee's brief, at 20.)  Thus, Warden claims ODNR "cannot complain that [he] failed to produce a larger sample size of individuals impacted by the ODNR's hiring prohibition."  (Appellee's brief, at 19.)

{¶ 56} We fail to see how ODNR's conduct caused a small statistical sample size in this case.  Warden points to no evidence ODNR filled any job openings after it instituted the retiree policy aside from the position he sought and the one Tugend filled.  If ODNR did fill other openings, Warden appears to admit that, at least during the first 11 months after ODNR instituted the policy, the policy affected no one.  It is possible no retirees applied for other openings.  If ODNR had publicized its policy on retirees, that fact might have contributed to the lack of applications.  But ODNR's failure to publicize its policy could not have decreased retiree applications.  To the extent Warden might be arguing ODNR did reject other retirees based on the policy but hid that fact, such an argument amounts to nothing more than speculation.

{¶ 57} Warden argues this court should disagree with the Third Circuit's finding that "[a]n adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact."  *Massarsky* at 121.  He claims the plaintiff-employee in *Massarsky* had "five years" to "muster up" disparate impact evidence, but Warden could not "muster up a larger sample" because he was the first person rejected under ODNR's policy. (Appellee's brief, at 20.)  Warden contends if we agree with the *Massarsky* court's finding, "no former state government employee could pursue an age discrimination disparate impact case if he happened to be one of the first few employees affected by a

neutral policy that caused a disproportionate impact upon individuals over forty." (Emphasis sic.) (Appellee's brief, at 20.)

{¶ 58} We disagree. If an employer's policy has only impacted one person, like the policy at issue here, there simply is no "disparate impact" on a protected class. If a policy in fact has a disparate impact on a protected class, nothing in our decision precludes the first people affected from making a disparate impact age discrimination claim. Thus, if ODNR's policy had a disparate impact and not just a theoretical impact on older applicants, Warden's status as the first person not hired under the policy would not preclude his lawsuit.

{¶ 59} Warden also contends this case is "strikingly similar" to the Ninth Circuit's decision in *Local 350*. (Appellee's brief, at 22.) But, as previously explained, we find this summary judgment case unpersuasive for the same reasons we found the Supreme Court of Ohio's decision in *Kohmescher* did not control in this case. Additionally, contrary to Warden's contention, the Ninth Circuit did not find "the violation alleged by the EEOC fell within the definition of disparate impact" even though E.E.O.C. did not present statistical evidence. (Appellee's brief, at 23.) The court simply stated the E.E.O.C.'s complaint was "cognizable as a disparate impact challenge." *Local 350* at 648, fn. 2.

{¶ 60} In sum, construing the evidence most strongly in Warden's favor, we find Warden did not present any evidence ODNR's retiree policy caused a disparate impact on a protected class. To the contrary, the evidence shows the policy only impacted one person in a protected class—Warden. Therefore, Warden failed in his burden to establish a prima facie case of disparate impact age discrimination.

{¶ 61} Because Warden failed to plead, litigate, or prove a disparate impact age discrimination, we sustain ODNR's second assignment of error. We reverse the portion of the Court of Claims' judgment finding ODNR liable for disparate impact age discrimination and awarding damages based on that liability finding. We reverse the portion of the Court of Claims' judgment finding ODNR liable for disparate impact age discrimination and, likewise, reverse the court's damage award to Warden, which was premised on the erroneous liability finding. We need not consider ODNR's "age-plus" discrimination argument, as it is moot.

C. *Damage Issues*

{¶ 62} The parties' remaining assignments of error—ODNR's third assignment of error and Warden's third cross-assignment of error—challenge the propriety of the Court of Claims' damage award. However, the Court of Claims premised the award on its erroneous disparate impact liability determination. Therefore, these assignments of error are rendered moot by our decision to sustain ODNR's second assignment of error, and we need not address them. App.R. 12(A)(1)(c).

## IV. CONCLUSION

{¶ 63} For the foregoing reasons, we overrule ODNR's first assignment of error and Warden's first and second cross-assignments of error. However, we sustain ODNR's second assignment of error and reverse the portion of the Court of Claims' judgment finding ODNR committed disparate impact age discrimination and awarding damages for that claim. This decision renders moot ODNR's third assignment of error and Warden's third cross-assignment of error. We remand this matter for the Court of Claims of Ohio to enter a judgment consistent with this decision.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*


KLATT, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 61} I simply cannot agree with the portion of the majority decision which addresses disparate impact. I cannot see how a policy barring people who are old enough to retire from state employment from being hired by the state for new employment can be anything but a policy which has disparate and negative impact on those who are more mature.

{¶ 62} Will the policy affect anyone in their teens, 20s or 30s? Clearly not. People that young will not have enough years in the Ohio Public Employees Retirement System ("OPERS") to retire. Most of the impact of the policy will be on people age 50 and older, people who went to work for the state of Ohio after college and then worked for 30 years to gain full retirement benefits.

{¶ 63} This policy is not theoretical.  It does not affect only one or two employees, it affects every state employee who retires and then decides that they want to return to state employment for whatever reason, including a discovery that their OPERS benefits do not pay their bills in the way contemplated.

{¶ 64} In short, I believe the trial court got it right on the issue of disparate impact and we should affirm the trial court's judgment on that issue.  Since the majority of this panel does not, I respectfully dissent.

_____