964 F.2d 11
 140 L.R.R.M. (BNA) 2384, 296 U.S.App.D.C.
11, 60 USLW 2795,
121 Lab.Cas. P 10,193
 Florence H. HICKS, d/b/a Ebon Research Systems, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
American Federation of Government Employees, Local 3450,
AFL-CIO, Intervenor.
 No. 91-1260.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 13, 1992.
Decided May 26, 1992.
 
 Jeffrey J. Pargament, Washington, D.C., with whom Angela D. Afflick was on the brief, for petitioner.
 William M. Bernstein, N.L.R.B., with whom Jerry M. Hunter, General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, Washington, D.C., were on the brief, for respondent. Charles P. Donnelly, N.L.R.B., Washington, D.C., also entered an appearance for respondent.
 Anne M. Wagner, New York City, for intervenor. Mark D. Roth and Kevin M. Grile, Chicago, Ill., were on the brief, for intervenor.
 Before RUTH BADER GINSBURG, BUCKLEY, and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 Pursuant to a contract with the National Institute of Occupational Safety and Health (NIOSH), an agency of the United States Government, petitioner Ebon Research Systems provided the animal care and support services staffs for a research facility located in Morgantown, West Virginia. When the Ebon employees at the NIOSH facility attempted to form a union, Ebon successfully resisted but the NLRB determined that in so doing the company committed various unfair labor practices.
 
 
 2
 In the proceedings before the NLRB, Ebon maintained that because the wages and benefits it provided its employees were essentially fixed by its contracts with the NIOSH, it could not engage in meaningful collective bargaining. Ebon argued that therefore under established policy the Board could not properly assert jurisdiction over it.
 
 
 3
 In Hicks v. NLRB (Hicks I), 880 F.2d 1396, 1397 (D.C.Cir.1989), we concluded that "the Board ha[d] offered no intelligible way of reconciling [its jurisdictional] decision with the rule" reflected in Res-Care, Inc., 280 N.L.R.B. 670 (1986), and Long Stretch Youth Home, Inc., 280 N.L.R.B. 678 (1986). We therefore remanded the case to the Board for "further action either consistent with its existing precedents or for generation of a new jurisdictional rule." 880 F.2d at 1400.
 
 
 4
 On remand, the Board issued a Supplemental Decision and Order in which it found that, with respect to wages, Ebon's contract with the NIOSH created only "potential" controls that the agency never actually exerted. With respect to fringe benefits and the non-economic aspects of its labor relations, the Board found that Ebon had substantial discretion. Upon these two bases, the Board reaffirmed its assertion of jurisdiction over Ebon. Ebon Research Systems, Inc., 302 N.L.R.B. No. 116 (1991).
 
 
 5
 Ebon has again petitioned for review, claiming that the Board abused its discretion in asserting jurisdiction over it, and the Board has cross-petitioned for enforcement of its order. We now uphold the Board, in light of the flexibility that Ebon retained to adjust employee benefits and the significant control that Ebon exercised over the non-economic aspects of the employment relationship. We further conclude that substantial evidence supports the Board's finding that Ebon discharged an employee for engaging in protected union activity, in violation of § 8(a)(3) of the National Labor Relations Act. 29 U.S.C. § 158(a)(3).
 
 I. BACKGROUND
 
 6
 Ebon is an "employer" within the definition given that term in the NLRA. The United States, however, is specifically exempted from that definition, as are various other public sector entities. See 29 U.S.C. § 152(2). Where an employer provides services to such an exempt entity, it is the Board's policy under Res-Care not to assert jurisdiction over the employer if it is "[in]capable of engaging in meaningful collective bargaining" by virtue of "the scope and degree of control exercised by the exempt entity over [its] labor relations." Res-Care, 280 N.L.R.B. at 673.
 
 
 7
 In Res-Care the Board declined to assert jurisdiction over an employer that ran a Job Corps center pursuant to a contract with the Department of Labor. The DOL required the employer to submit for its approval a schedule of wage ranges for each job classification. In addition, the "DOL ask[ed] the employer to submit [for approval] its personnel policies concerning compensatory time, overtime, severance pay, holidays, vacation, probationary employment, sick leave, cost-of-living increases, incentives, and equal employment opportunity." Id. at 675. The employer could not change the wage schedule or any personnel policy without the DOL's further approval. Moreover, the contract required the employer to submit monthly vouchers to the DOL in order to be reimbursed its labor costs, and the DOL could refuse to reimburse any labor costs incurred without its prior approval. Id. In those circumstances, the Board had no difficulty concluding that the employer was not able to engage in meaningful collective bargaining.
 
 
 8
 In its Supplemental Decision in this case, the Board found that the fringe benefit provisions of Ebon's contracts were significantly more flexible than those in the Res-Care contract. With respect to the non-economic conditions of employment, the Board concluded that Ebon "retained and exercised far greater control than the ... contractor in Res-Care." Ebon, 302 N.L.R.B. No. 116, slip op. at 12. The Board then pointed out that it had determined in Community Transit Services, Inc., 290 N.L.R.B. 1167 (1988), that jurisdiction may properly be asserted upon these grounds alone. Ebon, 302 N.L.R.B. No. 116, slip op. at 12 n. 14.
 
 
 9
 Turning to Ebon's control over wages, the Board found that the wage provisions of Ebon's contracts with the NIOSH created only "potential" control that the agency never actually exerted. In light of Ebon's flexibility in setting fringe benefits and determining the non-economic conditions of employment, it concluded that the NIOSH did not in practice exercise "such a high degree of control" over wages as to preclude Ebon from engaging in meaningful collective bargaining. Id. at 12.
 
 
 10
 In addition, the Board determined that the NIOSH was quite "pliable" in approving increased labor costs. Moreover, even if the NIOSH were uncharacteristically to reject a collectively bargained mid-term increase in its labor costs, the Board reasoned that the Service Contract Act, 41 U.S.C. 351 et seq., would require the NIOSH to recognize that labor cost increase in its "next service contract" with Ebon, and that in any event Ebon "could bargain for language in a collective-bargaining agreement to protect it from the consequences" if the NIOSH were to refuse to reimburse it for such an increase. Ebon, 302 N.L.R.B. No. 116, slip op. at 13-14.
 
 II. BOARD JURISDICTION
 
 11
 Ebon argues that the Board's Supplemental Decision asserting jurisdiction over it is inconsistent with the Board's prior decision in Res-Care and that it constitutes impermissibly "retroactive decisionmaking." We approach the jurisdictional aspect of this case mindful of the following precepts:
 
 
 12
 [We] will not disturb the Board's discretionary decision to assert its jurisdiction absent a showing that the Board acted unfairly and caused substantial prejudice to the affected employer. The Board nevertheless is bound by its own rules until it changes them, including the rules that it has adopted in order to channel what would otherwise be an essentially unreviewable discretion in the deployment of its prosecutorial resources.
 
 
 13
 Human Development Assoc. v. NLRB (HDA), 937 F.2d 657, 661 (D.C.Cir.1991) (citations omitted).
 
 A. Meaningful Collective Bargaining
 
 14
 The parties have focused their attention upon Ebon's series of cost-plus-fixed-fee contracts for animal care services, and therefore so shall we. First, Ebon insists that under the terms of those contracts it did not retain sufficient flexibility, especially regarding wages, to engage in meaningful bargaining. In this connection Ebon asserts that of the three elements in an employment relationship--(1) wages, (2) benefits, and (3) non-economic terms of employment--control over wages is the "most important factor in determining whether an employer can bargain meaningfully." Second, Ebon claims that the Board's focus upon Ebon's flexibility with respect to benefits and the non-economic terms of employment was neither consistent with Res-Care nor, in any event, supported by substantial evidence.
 
 
 15
 Wages. Ebon asserts that the wage provisions of its contracts were more restrictive than those of the contract in Res-Care because Ebon's contracts specified "precise compensation rates" whereas the Res-Care contract merely "set wage ranges." We agree that with respect to wages Ebon had if anything less flexibility than did the employer in Res-Care. Indeed, if control over wages were a necessary condition, we would doubt that Ebon was in a position to bargain meaningfully.
 
 
 16
 We disagree, however, with Ebon's premise that the Res-Care doctrine elevates control over wages to a paramount position in the analysis of whether an employer can engage in meaningful collective bargaining. In HDA we described Board practice, of which we approved, as follows: "Rather than applying any single-factor test, the Board determines whether ... an exempt entity controls the economic terms and conditions of the labor relationship so as to preclude meaningful collective bargaining." 937 F.2d at 662. We also noted that at least since Community Transit, 290 N.L.R.B. 1167, an "employer's lesser authority over the economic terms and conditions of employment [may be] offset by its extensive control over non-economic terms." HDA, 937 F.2d at 663. Thus, even if the Board in Res-Care itself made control over wages a fundamental condition of meaningful collective bargaining, that approach has been superseded by one that considers the overall employment relationship, in which wage flexibility is but one of several important factors. See HDA, 937 F.2d at 663; Community Transit, 290 N.L.R.B. at 1170. In this case, therefore, the Board did not abuse its discretion by looking at the degree to which Ebon had the authority to bargain over the non-wage aspects of its labor relations.
 
 
 17
 Fringe benefits. Ebon points out that although the animal-care contracts did not themselves require it to provide any specific fringe benefit, the Service Contract Act required Ebon to provide a minimum level of benefits set by the Secretary of Labor in accord with prevailing area standards. See 41 U.S.C. § 351(a)(2). Additionally, by incorporating Ebon's proposed budget, the contract in force when the Board asserted jurisdiction over it effectively capped reimbursable benefits at 30% of total direct labor costs. (More precisely, Ebon could not count upon reimbursement above that level unless it first got written approval from the NIOSH.)
 
 
 18
 Nonetheless the Board reasoned that the "provisions relative to employee fringe benefits in the animal-care contracts ... differ significantly from those in the ... contract at issue in Res-Care." Ebon, 302 N.L.R.B. No. 116, slip op. at 11. In Res-Care the exempt agency pre-approved both the level and the "substantive terms" of employee benefits for each of the employer's job classifications. Res-Care, 280 N.L.R.B. at 674. By contrast, Ebon's contracts specified neither the types nor the exact level of fringe benefits. Although the value of the benefits package Ebon could provide was bounded both by a floor and by a ceiling, in the room between them it could bargain with its employees over any possible array of benefits. See HDA, 937 F.2d at 664. For example, in bargaining the employees might propose to substitute group dental insurance for coverage of a certain type under their group medical insurance. Moreover, under the contract in force when the Board asserted jurisdiction, Ebon provided benefits valued at only 23% of total labor costs--well below the maximum 30% cap reimbursable under the contract. It therefore retained discretion in bargaining not only to adjust the mix of benefits, but substantially to increase the value of the package of benefits it provided. This is indeed the stuff of meaningful collective bargaining.
 
 
 19
 Non-economic terms. Finally, with respect to non-economic working conditions, we think the contracts also left Ebon with considerable control. Performance standards, working hours, and safety requirements were specified in the animal-care contracts, but key personnel policies were all left entirely within Ebon's discretion. And Ebon did in fact exercise this discretion. Ebon managers did all of the hiring for the animal-care contracts. Ebon Executive Director Florence Hicks made all termination decisions, and Ebon supervisors handled disciplinary matters without the participation of a NIOSH representative. Finally, Ebon supervisors handled all the employee scheduling, training, and performance evaluations. In Res-Care, by contrast, the exempt agency exercised "pervasive operational controls," setting hiring standards, reviewing standard operating procedures, and so on. Res-Care, 280 N.L.R.B. at 675. "With respect to employee terms and conditions of employment other than wages and benefits," therefore, the Board correctly found that Ebon "retained and exercised far greater control than the ... contractor in Res-Care." Ebon, 302 N.L.R.B. No. 116, slip op. at 12.
 
 
 20
 In sum, considering the flexibility that Ebon retained over benefits and the non-economic terms of its labor relations, we cannot say that the Board abused its discretion by asserting jurisdiction over the employer. The wage provisions of Ebon's contracts were more restrictive than those in Res-Care, but that is not a decisive point under the multi-part test that the Board has followed since Community Transit.
 
 B. Retroactive Decisionmaking
 
 21
 Citing our instruction in Hicks I that the Board take "further action either consistent with its existing precedents or for generation of a new jurisdictional rule," 880 F.2d at 1400, Ebon argues that by founding jurisdiction upon a principle not articulated in its original decision the Board engaged in impermissibly retroactive decisionmaking. As Ebon interprets our decision in Hicks I, the Board was precluded on remand from relying upon cases decided after the Board's first Decision and Order in this case, i.e. after July 29, 1988. See 290 N.L.R.B. 751 (1988). Under Ebon's interpretation, the Board would have to ignore, most notably, HDA, International Assoc. of Firefighters, 292 N.L.R.B. 1025 (1989), and Community Transit.
 
 
 22
 Our instruction in Hicks I cannot reasonably be read as constraining the Board to decide this case on remand in a manner consistent with the precedents available as of the date of its first decision. To do so would be artificially to freeze this case in time, making an instant anachronism of any decision the Board might make on remand. The more natural reading of the mandate of Hicks I is that the Board was free, as with any case on remand, to rely upon all precedents available as of the time that it reached a further decision, here July 28, 1989. See Aaacon Auto Transport, Inc. v. ICC, 792 F.2d 1156, 1161 (D.C.Cir.1986) ("agencies must [generally] apply the law in effect at the time a decision is made, even when that law has changed during the course of a proceeding"). And as can be seen from the analysis above, we think that the Board's renewed assertion of jurisdiction in its Supplemental Decision was consistent with the law as it had evolved to that time.
 
 C. The Board's Additional Grounds
 
 23
 Finally, Ebon argues that the Board erred insofar as it relied upon various alternative grounds for asserting jurisdiction over the employer. For example, Ebon takes issue with the Board's position that the employer could bargain meaningfully with a union because the Service Contract Act would require the NIOSH, in its next contract with Ebon, to absorb a collectively bargained labor cost increase. Because the Board's decision is adequately founded, as we saw in Part II.A above, upon the significant flexibility Ebon retained with respect to benefits and non-economic terms of employment, we need not consider Ebon's challenges to the Board's other grounds asserting jurisdiction.
 
 III. THE UNFAIR LABOR PRACTICE CHARGE
 
 24
 Assuming that the Board properly asserted jurisdiction over it, Ebon argues that the Board's finding that it discharged Cindy Moore in violation of the Act is not supported by substantial evidence. According to Ebon, the decision to terminate Moore for filing a false safety report was made before the employer learned of her union activities. Alternatively, Ebon claims that the Board failed to consider its legitimate business reason for discharging her.
 
 
 25
 There is substantial evidence for the Board's finding that Moore was discharged because she engaged in activity protected by the NLRA. Both the Board and the ALJ expressly found that Ebon's Executive Director Florence Hicks learned of Moore's union activities from an Ebon supervisor on the very day that she discharged Moore. Immediately after Hicks heard about the organizing campaign and Moore's participation in it, Hicks sent a letter to a NIOSH official complaining that NIOSH employees were soliciting Ebon employees to join a union and urging that he investigate the matter. Later that same day Hicks also distributed a letter to all Ebon employees forbidding them from engaging in union solicitation during working hours. That evening, Hicks fired Moore, claiming that she had engaged in unprofessional conduct that had jeopardized the safety of other employees. Because of the timing of Moore's discharge and Hicks' other anti-union activities, both the ALJ and the Board found that the reason Hicks gave for Moore's discharge was pretextual. Thus, the Board's findings contradict Ebon's assertions and there is substantial record support for the Board's version of events.
 
 IV. CONCLUSION
 
 26
 We hold that the Board did not abuse its discretion by asserting jurisdiction over Ebon because that employer could engage in meaningful bargaining with a union representing its employees. Furthermore, substantial evidence supports the Board's finding that Ebon committed an unfair labor practice by discharging employee Cindy Moore. Accordingly, Ebon's petition for review is denied and the order of the Board is in all respects
 
 
 27
 Enforced.