[Cite as *Brogan v. Family Video Movie Club, Inc.*, 2015-Ohio-70.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Tamara Brogan, et al.

Court of Appeals No. L-13-1283

Appellant

Trial Court No. CI0201203613

v.

Family Video Movie Club, Inc.

**DECISION AND JUDGMENT**

Appellee

Decided: January 9, 2015

* * * * *

Patricia Horner, for appellant.

Steven J. Forbes, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} Plaintiffs-appellants, Tamara Brogan and Cynthia Lentz, appeal the judgment of the Lucas County Court of Common Pleas, journalized December 4, 2013, which granted summary judgment in favor of defendant-appellee, Family Video Movie Club, Inc. For the reasons that follow, we affirm.

## I. Background

{¶ 2} Cynthia Lentz and Tamara Brogan were both employed by Family Video. Lentz first became employed by Family Video in August of 1998 when she was hired as a manager-in-training. She was promoted to store manager in December of that year. At some point, Lentz resigned, was later rehired, then resigned again in May of 2006. She was rehired in July of 2007, again as a store manager.

{¶ 3} In September of 2009, the store Lentz managed was robbed while Lentz was working. She was terminated for failing to comply with Family Video's procedures for handling a robbery situation. According to Family Video, Lentz violated its policy by following the thief as he exited the store, at which time he turned around and assaulted her, causing injury to Lentz. Upon her termination, Lentz was immediately replaced by Alex King, a male. Lentz implored the assistance of Bob Kording, an executive vice-president with the company, who quickly facilitated her rehiring. However, because her position had been filled, she was transferred to another Family Video location. At the time of her re-hire, concerns were expressed to her by regional manager, Jason Juhasz, about her attitude toward customers, her tendency to complain about company changes to hourly employees instead of to her managers, and her pushing-back when presented with goals. Those criticisms had been passed along to Juhasz by Grant Davis, a division manager to whom Lentz directly reported. Lentz was told that she would be terminated if she failed to meet her managers' expectations for improvement.

2.

{¶ 4} In the years following her 2007 re-hiring, Davis disciplined Lentz a number of times. According to Family Video Communication Forms, in June of 2007, she left work an hour and forty-three minutes early, allegedly without permission. In December of 2007, she was late to three meetings. In December of 2008, she was late for work, causing the store to open 20 minutes late. In November of 2009, she failed to make mid-shift deposits as required. In December of 2009, she left a "very rude" voicemail for Davis. In January of 2010, she failed to complete a monthly report, failed to complete items contained on a checklist provided to her by Davis, and was consistently late for her Friday shifts. Although not a customary method for evaluating store managers, Davis distributed evaluation forms to the hourly employees Lentz supervised and asked them to rate her performance. Those evaluations were very positive. Nevertheless, based on the incidents relayed to him by Davis, Juhasz terminated Lentz's employment on June 4, 2010, and replaced her with Aaron Roberts, a male.

{¶ 5} Brogan's employment with Family Video began December 22, 2004. She was promoted to store manager in 2006. In August of 2008 she was demoted to assistant manager, and she was ultimately terminated on April 27, 2011.

{¶ 6} As with Lentz, Davis was the district manager for the stores at which Brogan worked. In the months preceding her demotion to assistant manager, he issued a number of write-ups. In February of 2008, he complained that Brogan failed to organize the employee restroom and had not exhibited strong management skills due to her failure to delegate. One week in May of 2008, she did not work her required 44 hours during the

3.

store's hours of operation. In July of 2008, Davis claimed that she failed to show improvement by not doing her part to drive business and to be a leader. In addition to these written disciplinary warnings, Davis allegedly spoke with Brogan on a number of occasions about her failing to set a good example for employees through her sales, failing to hold her team accountable, failing to complete "we miss you" calls to customers, poor time management, failing to delegate, poor organization and planning, underperformance by her store, and failing to motivate and follow up with staff. As with Lentz, Davis asked hourly store employees to evaluate Brogan's performance. According to those evaluations, she was very good with customers, but she was described as not completing tasks efficiently and not providing training and direction to her staff. Davis demoted Brogan in August of 2008 and replaced her with a male.

{¶ 7} After her demotion, it appears that approximately two-and-a-half years passed with no write-ups. But in February of 2011, Davis disciplined Brogan for being late for five shifts in January. In March of 2011, Davis complained that Brogan struggled to complete day-to-day tasks and did little to train the staff. In April of 2011, she was disciplined for an incident in March in which her shift ended at 12:30, but she stayed until 1:30 to complete assigned tasks. Based on these incidents relayed to him by Davis, John Kobalanski, a regional manager, terminated Brogan's employment on April 27, 2011. She was replaced by a woman, Amanda Palmer.

{¶ 8} On June 4, 2012, Brogan and Lentz filed a complaint alleging violations of Ohio's wage and hour laws, wrongful discharge in violation of public policy, violations

4.

of the federal Fair Labor Standards Act ("FLSA"), gender discrimination, wrongful discharge in violation of public policy against gender discrimination, and intentional infliction of emotional distress. According to their complaint, Brogan and Lentz were not paid overtime for hours worked in excess of 40 hours; Brogan was terminated in retaliation for reporting alleged FLSA violations; Lentz was terminated on the basis of gender and was replaced by a man under the age of 40 with less management experience; Brogan was terminated on the basis of her gender in order to retain a male employee; and Family Video's conduct was extreme and outrageous and proximately caused them extreme emotional distress.

{¶ 9} On April 12, 2013, after taking appellants' depositions and exchanging discovery, Family Video moved for summary judgment on all of appellants' claims. After being granted a series of extensions, appellants filed a brief in opposition to the motion on June 10, 2013, and an amended opposition on September 4, 2013. Those briefs addressed only the gender discrimination claims. The trial court conducted a hearing on October 31, 2013, and at that hearing, appellants' counsel confirmed that appellants were withdrawing all claims but the gender discrimination claim.

{¶ 10} At the October 31, 2013 hearing, Brogan argued that she had been demoted on the basis of her gender. Appellants had not pled this in their complaint, so the court questioned whether it could consider that claim and instructed the parties to submit supplemental briefing addressing whether that allegation could be properly considered. The court also instructed the parties to submit supplemental briefing concerning the

5.

extent to which Family Video could be held liable for the actions of Davis, its district manager, when it was Juhasz and Kobalanski who ultimately terminated appellants.

{¶ 11} The parties submitted their supplemental briefs on November 8, 2013. Family Video indicated its position that Brogan should be permitted to amend her complaint to add allegations relating to the demotion, stated that it would not be prejudiced, but denied that the demotion was the result of discrimination. Although it conceded that Family Video could be held liable if Davis was found to have demoted Brogan based on her gender, it contended that in order for Family Video to be held liable for Lentz's termination, Lentz would have to show that Davis intended to convince Juhasz to terminate her on the basis of her gender and that Davis' conduct caused Juhasz to act. Appellants did not address the issue of whether Family Video could be held liable where the supervisor accused of discrimination did not himself carry out the adverse employment action.

{¶ 12} In an opinion file-stamped November 27, 2013, the trial court granted summary judgment to Family Video on all claims. Appellants filed this timely appeal, assigning the following error for our review:

I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT.

## II. Standard of Review

{¶ 13} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same

standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 14} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826,

7.

675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 15} Under R.C. 4112.02(A), it is an unlawful discriminatory practice "[f]or any employer, because of the * * * sex of any person, * * * to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 16} A discrimination claim may be proven by direct evidence or by circumstantial evidence. *Silberstein v. Montgomery Cty. Community College Dist.,* 2d Dist. Montgomery No. 23439, 2009-Ohio-6138, ¶ 32. "To establish a discrimination claim based upon circumstantial evidence, a plaintiff must initially demonstrate a prima facie case of discrimination." *Id.,* quoting *Temple v. City of Dayton,* 2d Dist. Montgomery No. 20211, 2005-Ohio-57, ¶ 85. This requires the plaintiff to show that (1) she was a member of a statutorily protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. *Starner v. Guardian Indus.*, 143 Ohio App.3d 461, 471, 758 N.E.2d 270 (10th Dist.2001), citing *Tessmer v. Nationwide Life Ins. Co.,* 10th Dist. Franklin No. 98AP-1278, 1999 WL 771013 (Sept. 30, 1999).

8.

{¶ 17} Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its action. *Silberstein* at ¶ 34. "If the employer articulates such a reason, the employee must show that the articulated reason was merely a pretext for discrimination." *Id.,* quoting *Temple* at ¶ 85. To establish pretext, the plaintiff must demonstrate that the articulated reason "(1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct." (Internal citations omitted.) *Dautartas v. Abbott Labs.,* 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 28.

### A. Cynthia Lentz

{¶ 18} In granting summary judgment on Lentz's claim, the trial court found that Lentz had established a prima facie case of sex discrimination because she was able to show that she was a member of a protected class, was discharged, was qualified for her position, and was replaced by a person outside the class. However, the court found that Family Video met its burden to provide a legitimate, non-discriminatory reason for Lentz's termination—the problems identified in the write-ups. The court concluded that Lentz failed to demonstrate that Family Video's articulated reasons for its decision were pretextual. It observed that the only evidence of pretext advanced by Lentz was an assertion at her deposition that male employees had been tardy but were not disciplined. The court held that Lentz failed to identify these males or show that they were similarly-situated to her. The primary issue on appeal with respect to Lentz's gender

9.

discrimination claim is whether she met her burden of establishing that the legitimate, nondiscriminatory reasons proffered by Family Video for her termination were pretext for discrimination.

{¶ 19} At her deposition, Lentz addressed many of Davis' criticisms of her performance. For instance, with respect to being late on Fridays, she testified that when she was rehired, she verbally discussed with then-regional manager, John VanSlooten, that she had child care issues that would cause her to be late for some Friday shifts. VanSlooten allegedly told her that it was not a problem as long as the store was adequately staffed. With respect to allegations that she left work early in June of 2007, she claimed that Davis had given her permission to leave early, but asked that she send an email when she left. Although she forgot to send the email, she saw Davis at a traffic light as she was leaving and they discussed through the open windows that she had forgotten to send the email, which did not appear to be a problem with Davis. Concerning the "rude" voicemail, she explained that her grandmother had just died and she was under a lot of stress. She apologized for the voicemail. And with respect to her failure to complete a report, she testified that Davis assigned the report during a managers' meeting and because she was waiting on customers, Davis knew that she had missed the part of the meeting when he assigned that particular task.

{¶ 20} The specific reasons set forth on Lentz's employee termination form were "lack of respect, acceptance & positive attitude * * * reflected in the disciplinary forms

10.

from 5/21/10 (excessive tardiness), 1/12/10 (checklist completion & follow-up), 1/11/10 (incomplete work), 12/7/10 (negative attitude to Grant), & 11/25/10 (deposit handling)."

{¶ 21} To carry her ultimate burden of proof under the first method for showing pretext, Lentz must present evidence that Family Video's proffered reasons for her termination had no basis in fact. However, "[a] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Knepper v. Ohio State Univ.,* 10th Dist. No. 10AP–1155, 2011-Ohio-6054, ¶ 12. Although Lentz provided what appear to be reasonable explanations for much of the conduct cited by Davis, she does not deny that these particular incidents occurred. Because she does not contend that the information contained in the employee termination form and related disciplinary action forms are factually false, she cannot establish the first showing as a matter of law. *See Frick v. Potash Corp. of Saskatchewan, Inc.,* 3d Dist. Allen No. 1-09-59, 2010-Ohio-4292, ¶ 46; *Singleton v. Select Specialty Hosp.-Lexington, Inc.,* 391 Fed.Appx. 395, 400 (6th Cir.2010); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir.2000).

{¶ 22} To meet her burden under the second type of showing, Lentz must establish that although the employer's legitimate, nondiscriminatory reasons are factually correct and such facts could motivate discharge, an illegal motivation for termination was more likely than the reasons proffered by Family Video. *Mittler v. OhioHealth Corp.,* 10th Dist. Franklin No. 12AP-119, 2013-Ohio-1634, ¶ 48. In considering Lentz's claim, we "are not to judge whether [Family Video] made the best or fairest decision, but to

11.

determine whether the decision would not have been made but for discrimination * * *." *Id.* at ¶ 52, citing *Knepper* at ¶ 23; *Olive v. Columbia/HCA Healthcare Corp.,* 8th Dist. Cuyahoga No. 75249, 2000 WL 263261 (Mar. 9, 2000) (explaining that employee's "exemplary work record" and "long history of achievement" did not establish that her termination was the product of discrimination); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."). Here, despite what appears to be reasonable justification for much of the conduct complained of in Lentz's termination notice and accompanying write-ups, Lentz has failed to articulate a basis upon which we can conclude that there exists a genuine issue of material fact whether the decision to terminate her was illegally motivated.

{¶ 23} Finally, the third way of showing pretext "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." (Internal citations and quotations omitted.) *Warden v. Ohio Dep't of Natural Res*., 10th Dist. Franklin No. 13AP-137, 2014-Ohio-35, ¶ 38. "That is, if an employer claims it fired the protected class member for certain misconduct, but the employer did not fire a person outside the class for essentially the same conduct, the fact finder could infer the misconduct was not the real motivation for the discharge." *Id.* Here, Lentz claims that others—including two male employees—were consistently late but were not disciplined. "To establish pretext

12.

through comparison to a similarly-situated co-worker, the co-worker must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Internal citations and quotations omitted.) *Wigglesworth v. Mettler Toledo Internatl., Inc.,* 10th Dist. Franklin No. 09AP-411, 2010-Ohio-1019, ¶ 28. Lentz makes vague assertions that two male employees engaged in substantially similar conduct, however, she has failed to set forth any facts showing that these male employees were similarly-situated—that is, she has failed to show that these other individuals were salaried employees who held store manager positions as she did.

{¶ 24} We find that Lentz has failed to create a genuine issue of material fact as to whether Family Video's reasons for terminating her were pretextual, thus, the trial court did not err in granting Family Video's motion for summary judgment.

### B. Tamara Brogan

{¶ 25} Turning to Brogan's claim, in granting summary judgment to Family Video, the trial court held that Brogan failed to establish a prima facie case of gender discrimination because she was replaced by a woman. It should be observed, however, that the fourth requirement of a prima facie discrimination case—i.e., that the plaintiff was replaced by someone outside the protected class—can also be established by showing, in addition to the first three elements, that a comparable non-protected person was treated better. (Internal quotations omitted.) *Mitchell v. Toledo Hosp.*, 964 F.2d

13.

577, 582-83 (6th Cir. 1992). To establish the "treated better" element, "the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated" employees who are not members of the protected class. *Id.,* citing *Davis v. Monsanto Chemical Co.,* 858 F.2d 345 (6th Cir.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989); *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir.1974).

**{¶ 26}** Brogan's claim with respect to her April 2011 termination fails regardless of whether the "replaced" or "treated better" element is used. When she was terminated, she was replaced by a female. Further, she has advanced no evidence establishing that employees outside the protected class were treated better.

**{¶ 27}** As to her claim as it relates to her demotion, the trial court refused to consider Brogan's claim that she was demoted in order to promote a male, Alex King, because it was not pled in her complaint. Although Family Video conceded in its supplemental briefing following the October 31, 2013 hearing that appellants could properly amend their complaint to include allegations concerning Brogan's demotion, the trial court refused to consider the demotion because appellants did not move to amend the complaint after learning that Family Video did not object.

**{¶ 28}** With respect to her gender discrimination claim, Brogan's complaint alleged as follows:

14.

Brogan suffered an adverse employment action by way of her termination as part of a scheme to eliminate her employment because of her gender. She further states that her termination allowed Defendant to retain a male employee in her stead; similarly-situated male employees were not subjected to discharge as was Plaintiff Brogan, despite her exemplary employment record.

{¶ 29} It is well-established in Ohio that cases should be decided on their merits. *Perotti v. Ferguson,* 7 Ohio St. 3d 1, 3, 454 N.E.2d 951 (1983). As explained by Judge Osowik while on the trial bench:

> The Ohio Civil Rules require "notice pleading" rather than "fact pleading." "Notice pleading" under Civ.R. 8(A) and 8(E) merely requires that a claim concisely set forth only those operative facts sufficient to give "fair notice of the nature of the action." Except in very narrow circumstances, such as fraud, a plaintiff is not required to plead the operative facts of his or her case with particularity. Plaintiff is not required to prove his or her case at the pleading stage. (Internal citations omitted.)

*Columbia Gas of Ohio, Inc. v. Robinson,* 81 Ohio Misc. 2d 15, 15-17, 673 N.E.2d 701 (M.C.1995).

{¶ 30} Although it would have been advisable to include specific facts in her complaint relating to her demotion, it did not change the nature of the action—her claim remained that she suffered an adverse employment action on the basis of her gender when

15.

she was replaced by a male. But more significantly, Family Video has been on notice since September of 2012, when Brogan responded to discovery requests, that her demotion was among the adverse employment actions she was claiming were discriminatory. That was just three months after filing her complaint. She also testified at length about this at her January 4, 2013 deposition, and she raised it in response to Family Video's motion for summary judgment. Family Video addressed the claim in its reply in support of summary judgment.

{¶ 31} In its November 8, 2013 filing in the trial court, Family Video stated:

> After reviewing the issue, * * * Family Video agrees that Ms. Brogan should be permitted to amend her Complaint to add this allegation. *See* Oh. Civ. R. 12 (stating that leave of court to amend a pleading "shall be freely given when justice so requires"). While Family Video's Motion for Summary Judgment focused on her termination, it addressed her demotion claims in its Reply and will not be prejudiced by the Court's consideration of that claim.

{¶ 32} Brogan's counsel apparently understood things differently. She believed that Family Video had conceded that the complaint was sufficient to encompass the demotion—not that amendment of the complaint was necessary.

{¶ 33} In its decision, the trial court declared that it would not consider the demotion claim because Brogan did not file a motion to amend in the 19 days between the filing of the briefs and the issuance of the court's ruling. We conclude that this was

16.

error and that the trial court should have communicated to the parties how to address the matter procedurally, giving Brogan an opportunity to either amend or move to amend the complaint in the manner preferred by the trial court.[1]

{¶ 34} Had the trial court provided Brogan an opportunity to amend or move to amend her complaint to add allegations respecting her demotion, we assume it would have concluded that she established a prima facie case of gender discrimination when she was demoted and replaced by a male. This would have required the court to next determine whether Family Video articulated a legitimate, non-discriminatory reason for demoting Brogan.

{¶ 35} The disciplinary action forms leading to Brogan's demotion indicate Davis' concerns: (1) she failed to organize the employee restroom (which served as a storage area for the store's promotional artwork) as Davis directed her to do; (2) she was unorganized and failed to properly delegate; (3) in May of 2008, she failed to work the required 44 hours during the store's hours of operation; and (4) she was ineffective as a manager and did not show improvement despite knowing of Davis' concerns. According to a July 2008 email, Davis spoke with Brogan about additional concerns: poor sales, and failing to hold her team accountable, failing to make "we miss you" calls, not managing her time well, failing to organize and plan, not setting a good example for her team, failing to follow-up with employees and to motivate them. Although Brogan

---

[1] For example, the trial court could have issued an order stating that Brogan shall file a motion to amend her complaint (or simply file an amended complaint, depending on the trial court's preference) within seven days (or some other appropriate time period).

17.

claims that "these disciplinary actions were not, in reality, based on leadership issues, rather they were based on discriminatory intent and practices," she offered no evidence to support that claim or to refute the accuracy of the information contained in the write-ups.[2]

{¶ 36} Brogan does assert that Davis treated King more favorably because Davis did not discipline King for failing to issue a write-up to Brogan for "working off the clock." To put it in context, King, who was Brogan's manager, informed Davis that he discovered that Brogan had on a couple of occasions worked after the store closed to catch up on tasks. Brogan's position is that Davis should have disciplined King for poor managerial skills exhibited by his failure to discipline Brogan himself. Davis testified that he expected King to inform him if Brogan worked off the clock because it was an issue that Davis had discussed with Brogan in the past. We find that this particular example does not rise to the level of creating a genuine issue of material fact that Davis treated males more favorably than females.

{¶ 37} While we recognize that the trial court's analysis of Brogan's claim did not extend beyond determining whether she made a prima facie case, "[i]n our de novo review of summary judgment matters, we may still inquire whether the judgment may be affirmed on alternative grounds." (Citations omitted.) *Howell v. Whitehurst Co.*, 6th Dist. Lucas No. L-05-1154, 2005-Ohio-6136, ¶ 20-21 ("W[e] conclude that, presuming appellant can establish a prima facie case, we can alternatively affirm summary judgment

_____

[2] At her deposition, Brogan denied that she did not work the required 44 hours and claimed that she actually worked 45 hours that week, but she failed to comment in the space provided on the discipline form or to otherwise establish that she, in fact, worked the required number of hours.

18.

on grounds that appellant cannot rebut appellee's legitimate justifications for her termination by showing pretext."). Brogan has failed to rebut Family Video's legitimate, non-discriminatory reasons for demoting her.

{¶ 38} We find Lentz's and Brogan's sole assignment of error not well-taken.

### IV.  Conclusion

{¶ 39} The trial court properly granted summary judgment in favor of Family Video. We, therefore, affirm the December 4, 2013 judgment of the Lucas County Court of Common Pleas. The costs of this appeal are assessed to appellants pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     _____
                                                                     JUDGE

Arlene Singer, J.       

                                           _____
James D. Jensen, J.                                   JUDGE
CONCUR.

                                           _____
                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.