[Cite as *Love v. Columbus*, 2021-Ohio-3494.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carlton Love, | : | |
| Plaintiff-Appellant, | : | No. 20AP-41 |
| | | (C.P.C. No. 16CV-3490) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on September 30, 2021

---

**On brief**: *Law Offices of John C. Camillus, LLC*, and *John C. Camillus*, for appellant.

**On brief**: *Zach Klein*, City Attorney, and *Susan E. Williams*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Carlton Love, from a decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, city of Columbus (individually "city") and Tatyana Arsh.

{¶ 2} This appeal follows this court's remand in *Love v. Columbus,* 10th Dist. No. 17AP-696, 2019-Ohio-620, and the following background facts are taken primarily from our prior decision in *Love.* Appellant, an African-American, "began working for the city in 1992 as an engineer aide." *Love* at ¶ 2. He was subsequently promoted to the position of "pipeline locator and was responsible for locating underground utility lines." *Id.* Requests made "to mark utility lines are commonly referred to as 'tickets' or 'OUPS tickets.' " *Id.*

Appellant was "a member of the American Federation of State, County, and Municipal Employees, Ohio Council 8, Local 1632" (hereafter "Union"). *Id.*

{¶ 3}   In 2006, Cheryl Roberto, Director of the Department of Public Utilities (hereafter "the department"), moved the department into the "Ohio Utilities Protection Service" (hereafter "OUPS") system. *Id.* Appellant alleged that, at the time, "Roberto met with 50-60 employees and promised them a pay raise." *Id.* Further, "Roberto told [appellant] that even though he would be responsible for more job duties," including responsibility for marking water, sewer, and electric lines (rather than just water lines as previously), "he would receive commensurately more pay." *Id.*

{¶ 4}   Roberto subsequently "left her employment," and Arsh "became the Director of Public Utilities." *Id.* at ¶ 3. Appellant "learned he would not be receiving a pay raise other than the negotiated pay raises pursuant to the collective bargaining agreement." *Id.* Appellant stated in his deposition that "he complained to Deputy Director Mark Kouns and the city's Equal Employment Opportunity ("EEO") officer, Dr. Matthews, two times each, that he felt he was not receiving the promised raises because of his race." *Id.* Appellant further testified that, in 2008, "his supervisor, Bill Stover, threatened him and used a derogatory racial term." *Id.* at ¶ 4. Following an investigation, "Stover was charged with violations of City of Columbus Central Work Rules," and Stover subsequently "resigned on December 8, 2008." *Id.*

{¶ 5}   Prior to appellant's complaint against Stover, "the department began receiving complaints from inspectors and contractors that [appellant] was not properly marking utility lines at various job sites," and "[a] water line was hit and damaged, costing approximately $50,000 to repair." *Id.* at ¶ 5. Disciplinary charges were filed against appellant "for violating Central Work Rules 1, 6, and 7 (Dishonesty, Insubordination, and Neglect of Duty)." *Id.* In July 2008, appellant "was charged with violating Central Work Rules 6 and 7 (Insubordination and Neglect of Duty) because he failed to complete a work ticket." *Id.* Later that month, appellant "was again charged with violations of Central Work Rules for failure to properly mark a water line that was hit and damaged." *Id.*

{¶ 6}   On October 8, 2008, appellant entered into a last chance agreement with the city, and he "admitted engaging in the conduct described in the three violations." *Id.* at ¶ 6. The last chance agreement provided that if appellant "was found guilty of violating

another work rule during the three years the Last Chance Agreement was in effect, his employment would be terminated." *Id.*

{¶ 7} In September 2010, appellant's supervisor "began receiving complaints from inspectors and contractors regarding [appellant] not marking utility lines properly," and "[t]here were five separate incidents involving a mismarked line or incomplete marking." *Id.* at ¶ 7. Following an investigation, "charges were filed against [appellant] for violating Central Work Rules 1, 6, and 7 (Dishonesty, Insubordination, and Neglect of Duty)." *Id.*

{¶ 8} On November 9, 2010, a disciplinary hearing was conducted by a city labor relations hearing officer. The hearing officer found appellant "guilty of the charges and, therefore, ordered [appellant's] employment terminated, effective November 19, 2010." *Id.* at ¶ 8.

{¶ 9} The Union filed a grievance challenging the work rule violations, and a "Step 2 grievance hearing" was held on January 10, 2011, conducted by a city hearing officer. *Id.* at ¶ 9. The hearing officer found appellant "violated the work rules and upheld his termination on January 18, 2011." *Id.* The Union declined to pursue any further appeals.

{¶ 10} Appellant filed a complaint in the Franklin County Court of Common Pleas against the city and Arsh, "alleging race discrimination and retaliatory discharge." *Id.* at ¶ 10. Appellant dismissed the action but refiled it on April 11, 2016. He then filed an amended complaint, alleging race discrimination and retaliation. The city and Arsh filed a joint motion for summary judgment, which the trial court granted on August 31, 2017.

{¶ 11} Appellant appealed the judgment of the trial court asserting the court erred in granting summary judgment for appellees on his claim for race discrimination. In *Love,* a majority of this court found the trial court erred in determining appellant failed to make a prima facie case for employment discrimination, holding that a material issue of fact existed as to why appellant's position was kept open for nine months before the director hired a non-protected class replacement. This court declined to "reach issues relating to burden shifting to the employer or pretextual based reshifting of the burden to [appellant]." *Id.* at ¶ 30.[1]

---

[1] A dissenting member of the panel deemed the dispositive issue to be "whether the trial court erred as to evidence of pretext," stating it was not premature to address "the next steps of the *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792 (1973)] burden-shifting analysis" in light of the fact the parties had raised the issue of evidence of pretext to the trial court, and noting the trial court had ruled on pretext "as an alternative basis to find summary judgment in favor of appellees." *Love* at ¶ 33-34 (Sadler, J., dissenting).

{¶ 12} Following this court's remand, the trial court conducted a status conference during which appellees argued that, even assuming appellant had established a prima facie case of discrimination, his claim failed because he was terminated for a non-discriminatory legitimate business reason. The trial court permitted appellees "to file for summary judgment as to that specific issue." (Decision & Entry Granting Def.'s Mot. For Summ. Jgmt. at 2.)

{¶ 13} On December 17, 2019, the trial court issued a decision and entry granting appellees' motion for summary judgment. Specifically, the court found appellant failed to show that appellees' "stated legitimate non-discriminatory reason for his termination is a mere pretext for discrimination." (Decision & Entry Granting Def.'s Mot. For Summ. Jgmt. at 6.)

{¶ 14} On appeal, appellant sets forth the following assignment of error for this court's review:

> The Trial Court erred in granting summary judgment for the Defendants on Plaintiff's claim for race discrimination.

{¶ 15} Under his single assignment of error, appellant argues the trial court erred in finding his sworn deposition testimony insufficient to raise a genuine issue of material fact as to pretext. Appellant further contends the court erred in failing to conclude that inconsistencies in appellees' explanation for his termination created a genuine issue of material fact regarding pretext.

{¶ 16} Under Ohio law, summary judgment is appropriate when the moving party demonstrates "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party." *U.S. Specialty Ins. Co. v. Hoffman*, 10th Dist. No. 19AP-189, 2020-Ohio-4114, ¶ 17, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. This court's review of a trial court's ruling on a motion for summary judgment "is de novo." *Id.,* citing *Hudson* at ¶ 29. Thus, "an appellate court conducts an independent review, without deference to the trial court's determination." *Id.*, citing *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 17} Following this court's remand in *Love*, the trial court proceeded on the assumption appellant "has established a *prima facie* case of racial discrimination." (Remand Decision at 4.) The court therefore focused on the issue of pretext, addressing whether appellant demonstrated genuine issues of material fact as to whether appellees' proffered reasons for his termination were pretext for racial discrimination. The trial court initially determined appellees "have established that [appellant] was fired for a legitimate non-discriminatory reason, *i.e.* his various work violations and disciplinary actions," and that appellant "concedes that [appellees] have met their burden and the burden now shifts to him to show that [appellees'] stated reason for his termination is simply a pretext for discrimination." (Decision & Entry Granting Def.'s Mot. For Summ. Jgmt. at 5.)

{¶ 18} Under Ohio law, if a plaintiff establishes a prima facie case of discrimination,[2] "the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its action." *Tanksley v. Howell*, 10th Dist. No. 19AP-504, 2020-Ohio-4278, ¶ 23, citing *Veal v. Upreach, LLC,* 10th Dist. No. 11AP-192, 2011-Ohio-5406, ¶ 21, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The explanation offered by the employer "must be legally sufficient to justify a judgment for the defendant." *Id.*, citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981).

{¶ 19} If an employer "articulates a legitimate non-discriminatory reason for its action, the burden shifts back to the plaintiff to show the proffered reason was not the true reason for the adverse employment action, but was a pretext for discrimination." *Id.,* citing *Veal* at ¶ 21, citing *Burdine* at 253. In this respect, a reason offered by an employer " 'cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, and that discrimination was the real reason.' " (Emphasis sic.) *Id.*, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

{¶ 20} A plaintiff may show the employer's proffered reason for the adverse employment action is a pretext for discrimination "by demonstrating that the stated reason had no basis in fact, the reason offered was not the actual reason for the employment action, or that the reason offered was insufficient to explain the employer's action." *Id.,* citing

---

[2] In order to state a prima facie case of racial discrimination, a plaintiff must demonstrate: "(1) membership in a protected class; (2) adverse employment action; (3) qualification for the position lost or not gained; and (4) the position remained open or was filled by a person not of the protected class." *Janiszewski v. Belmont Career Ctr.*, 7th Dist. No. 16 BE 0009, 2017-Ohio-855, ¶ 54, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).  The ultimate burden, however, " 'of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' "  *Id.* at ¶ 24, quoting *Burdine* at 253.

{¶ 21} Appellant argues he met his burden of providing evidence of pretext in two ways, asserting that: (1) "white line operators were not disciplined at all for engaging in the same activity that supposedly" resulted in appellant's termination, and (2) that appellees' explanations for appellant's termination were inconsistent and constituted evidence of pretext.  (Appellant's Brief at 8.)

{¶ 22} Appellant first contends his own testimony establishes that other line locators engaged in the same conduct for which the city claims he was terminated, yet they were not disciplined.  According to appellant, while the record does not reflect that these other line locators were likewise on a last chance agreement, this would not explain why the others were not disciplined in any way for the same conduct, nor explain why appellant was placed on the last chance agreement in the first place.

{¶ 23} The trial court, in addressing this argument, held in part:

> In support of this argument, Plaintiff cites to his own deposition testimony.  The Court has reviewed the testimony cited by Plaintiff and finds it insufficient.  Plaintiff states numerous times that other workers committed the same work place violations as Plaintiff and were not disciplined, but he never identifies a specific employee or example.  Further, Plaintiff does not provide the Court with supporting evidence in the form of documents or deposition testimony to support this claim.  Plaintiff's statements are general in nature and cannot be viewed as more than mere conjecture. * * * Plaintiff cannot rely on mere conjecture to show that Defendants' stated reason for his termination is a pretext for discrimination.

(Remand Decision at 5-6.)

{¶ 24} In the present case, appellant does not dispute that he entered into a last chance agreement with his employer and that he was terminated after a labor relations hearing officer found him guilty of charges for violating work rules related to dishonesty, insubordination, and neglect of duty.  Violation of a last chance agreement constitutes "a legitimate and nondiscriminatory reason" for termination.  *Hartman v. Ohio Dept. of*

*Transp.*, 10th Dist. No. 16AP-222, 2016-Ohio-5208, ¶ 20. *See also Tack v. PCC Airfoils, Inc.,* 5th Dist. No. 2008CA00015, 2008-Ohio-6898, ¶ 48 (finding employer had legitimate non-discriminatory reason for terminating appellant for violation of last chance agreement). As noted, once an employer raises a "legitimate non-discriminatory reason for its action," the burden shifts back to the plaintiff to show the proffered reason was a pretext for discrimination. *Tanksley* at ¶ 23.

{¶ 25} Upon review, we agree with the trial court that appellant did not meet his burden as he offered only his own general assertions that other employees were not disciplined for similar acts. During his deposition testimony, appellant stated: "A lot of line locators would do things and they * * * never got wrote up." (Appellant Depo. at 21.) When asked why he believed race played a role in his treatment, appellant responded: "I just feel that it was my race because other people were doing and did worse than I did and did not get wrote up or nothing or no time off or nothing." (Appellant Depo. at 37.) When pressed as to specific names of these individuals, he responded: "I can't remember exactly who or the dates but we all did the same thing." (Appellant Depo. at 81.)

{¶ 26} As noted, an employer's reason cannot be pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Tanksley* at ¶ 21. Further, once the burden shifted back to appellant, "he needed to demonstrate the pretext with actual evidence, not just conclusory, self-serving statements." *Stembridge v. Summit Academy Mgt.*, 9th Dist. No. 23083, 2006-Ohio-4076, ¶ 24. *See also Smith v. Kelly*, 2d Dist. No. 2011 CA 77, 2012-Ohio-2547, ¶ 29 (plaintiff failed to put forward "sufficient evidence" to create a genuine issue of material fact that her race or gender was real reason for adverse employment action where she "offered only her own self-serving statements of pretext on the part of appellees"); *Brahmbhatt v. Gen. Prods. Corp.*, S.D.Ohio No. 1:12cv919 (June 16, 2014), citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir.1992) ("uncorroborated, conclusory statements and self-serving allegations taken solely from [a plaintiff's] testimony" cannot alone satisfy a plaintiff's burden as to pretext).

{¶ 27} Here, the sole evidence offered by appellant was his self-serving testimony that other employees were not disciplined for similar acts. Appellant failed, however, to identify any specific individuals or acts, nor does he cite to any record evidence in support of his assertions, and we agree with the trial court that such unsubstantiated allegations are

insufficient to show pretext. *See, e.g., McIlwain v. Ohio Dept. of Mental Health*, 409 F.Supp.2d 908, 918 (N.D.Ohio 2006) (although plaintiff alleges she was disciplined for "behavior for which 'other * * * employees' who engaged in the same behavior were not disciplined, she fails to identify such employees and the circumstances surrounding their discipline, rendering this a mere self-serving statement of no evidentiary value"); *Brogan v. Family Video Movie Club, Inc.*, 6th Dist. No. L-13-1283, 2015-Ohio-70, ¶ 23 (plaintiff's vague assertion that two unidentified males engaged in similar misconduct but were not disciplined failed to create a genuine issue of material fact as to pretext). Based on the record presented, the trial court did not err in finding appellant could not rely on mere conjecture, nor did the court err in its determination that appellant's uncorroborated deposition testimony did not create a genuine issue of material fact regarding pretext.

{¶ 28} Appellant also maintains, in support of a finding of pretext, that appellees' explanation for his termination changed. Specifically, appellant argues that, despite the city's admission that his failure to mark utility lines did not cause damages or injuries, Arsh testified that appellant caused monetary damages by failing to mark a water line.

{¶ 29} While an employer's "inconsistent justification for termination may support a finding of pretext, * * * differences that do not suggest actual inconsistency in the decision maker's justifications do not establish pretext." *Voltz v. Erie Cty.,* 617 Fed.Appx. 417, 427 (6th Cir.2015). Further, courts have held that apparent inconsistencies do not support a finding of pretext where they "all 'revolve around a single idea.' " *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 351 (6th Cir.1998) (trial court properly found no inconsistency among "three 'different' reasons" offered by employer for elimination of plaintiff's position because they all revolve around single idea that plaintiff's position could no longer be justified as being cost-effective). *See also Gunn v. Senior Servs. of N. Kentucky,* 632 Fed.Appx. 839, 847 (6th Cir.2015) ("amplifying the core reason that initially drove the employer to discharge an employee * * * with additional, but consistent, non-discriminatory reasons does not constitute 'shifting justifications' ").

{¶ 30} In addressing appellant's argument on this issue in the instant case, the trial court found the employer's reasons for appellant's termination "have been consistent." (Remand Decision at 6.) Based on this court's de novo review, we agree.

{¶ 31} The record indicates that testimony by Arsh, in which she stated appellant failed to mark a water line, resulting in damage to the line, was consistent with charges

brought during a labor relations hearing (charging appellant with insubordination and neglect of duty, and alleging "[t]he City's water line was hit and damaged during excavation of the site"). (Aug. 14, 2008 Notice of Hearing.) The record on summary judgment included the affidavit of Douglas A. Sarff, a human resources manager responsible for maintaining the city's employee personnel and disciplinary files. Sarff averred in his affidavit that, prior to appellant's complaint against Stover, the department "began receiving complaints from inspectors and contractors that [appellant] was not properly marking utility lines at various job sites," and that an investigation revealed "eight OUPS tickets that [appellant] had not completed properly." (Sarff Aff. at ¶ 12.) He further averred that, because appellant "did not properly mark the utility lines, a water line was hit and damaged." (Sarff Aff. at ¶ 12.)

{¶ 32} Appellant acknowledged such fact during his deposition testimony, which included the following exchange regarding the contents of a deposition exhibit:

> Q. I'll hand you what I've marked as Exhibit 4. And this is Disciplinary Action, employee's name Carlton Love, correct?
>
> A. Yes, ma'am.
>
> * * *
>
> Q. And it looks like this is a violation of City Work Rule No. 6, Insubordination, and No. 7, Neglect of Duty, for an emergency OUPS ticket, correct?
>
> A. Yes, ma'am, that's what it looks like here.
>
> Q. And here it says the City's water line was hit and damaged during excavation after you said you closed out an OUPS ticket and it wasn't properly done, correct?
>
> A. Yes, ma'am. * * *

(Appellant Depo. at 42.)

{¶ 33} Upon review, we find the trial court properly found the stated reasons were not inconsistent as they all relate to the "same basic concept," i.e., that appellant failed to properly mark utility lines. *Gunn* at 847 (no inference of pretext warranted because each of employer's stated reasons "is consistent with the others," and all relate to same basic

concept that plaintiff "failed to adequately perform" job duties).  Accordingly, the alleged inconsistency cited by appellant is "insufficient to raise an inference of pretext."  *Id.*

{¶ 34} Based on this court's de novo review, the trial court did not err in its determination that appellant presented insufficient evidence to demonstrate that appellees' stated legitimate, non-discriminatory reason for his termination was mere pretext for discrimination. Accordingly, because appellant has failed to establish a genuine issue of material fact regarding pretext, we conclude the trial court did not err in granting summary judgment in favor of appellees.

{¶ 35} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____