[Cite as *Drummond v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1096.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deborah Drummond, | : | |
| Plaintiff-Appellant, | : | No. 21AP-327 |
| | | (Ct. of Cl. No. 2020-00161JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on March 31, 2022

**On brief:** *Roth Blair*, and *John A. McNally, IV*, for appellant.

**On brief:** *Dave Yost,* Attorney General, *Randall W. Knutti,* and *Heather Lammardo*, for appellee.

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Deborah Drummond, appeals from a judgment entry of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on Drummond's claims for race and age discrimination. For the following reasons, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Drummond is an African American woman who was born in 1962. She has been employed by ODRC in various roles since October 1997, and, as of June 2018, she was a Correctional Lieutenant at the Ohio State Penitentiary.

{¶ 3} In June 2018, ODRC posted an employment notice for the position of Program Administrator 2 ("PA2") at the Ohio State Penitentiary. The position was

responsible for ensuring institutional compliance with the federal Prison Rape Elimination Act and with American Correctional Association accreditation standards, including management and coordination of audits.[1] Drummond was one of 14 applicants for the PA2 position, and one of 6 applicants selected to interview for the position. The interviews were conducted by a panel composed of Marla Hammond, the Director of Personnel at the Ohio State Penitentiary; Thomas Horton, a Correctional Warden Assistant 2 who had just been promoted from the PA2 position; and Dan Lipperman, a Regional Audit Administrator for ODRC. Lipperman was designated as the subject-matter expert on the interview panel. Horton was included on the interview panel because he would be supervising the individual hired for the PA2 position.

{¶ 4} After conducting interviews, the panel unanimously recommended to Warden Richard Bowen that the PA2 position be offered to Abbey Palmer. Palmer was then employed as a General Activities Therapist 2 at the Ohio State Penitentiary. Bowen accepted the panel's recommendation and recommended Palmer to ODRC Regional Director Todd Ishee, who made the final selection based on the recommendation. Ishee offered the PA2 position to Palmer and she accepted. Palmer was on maternity leave at the time she was selected for the position.[2] At Horton's recommendation, Drummond was asked to perform the duties of the PA2 position as a temporary assignment until Palmer completed her maternity leave.

{¶ 5} Drummond filed a complaint in the Court of Claims, asserting claims for race and age discrimination under R.C. 4112.02(A), and violation of public policy.[3] ODRC moved for summary judgment on Drummond's race and age discrimination claims. ODRC claimed Palmer was not chosen for the position based on race or age, but rather because of

---

[1] The published position description also referred to the position as Operational Compliance Manager or Operational PREA Compliance Manager.

[2] Drummond asserts that appointing Palmer to the PA2 position while she was on maternity leave violated ODRC's policy on job changes while on medical leave. However, Drummond does not argue this alleged policy violation was evidence of discrimination; therefore, we need not reach that issue.

[3] ODRC moved to dismiss Drummond's claim for violation of public policy, asserting it failed to state a claim on which relief could be granted. The Court of Claims granted ODRC's motion, concluding Drummond could not state a claim for wrongful termination in violation of public policy because she was not an at-will employee. Drummond's claim for punitive damages was also stricken by the court pursuant to *Drain v. Kosydar*, 54 Ohio St.2d 49 (1978). Drummond has not appealed the dismissal of her violation of public policy claim or her claim for punitive damages.

a superior interview performance. ODRC alleged Drummond failed to show its reason for hiring Palmer was a pretext for discrimination. ODRC further claimed Drummond did not produce any evidence that Drummond's race or age were the real reason it did not hire her.

{¶ 6} Drummond opposed the motion for summary judgment, asserting ODRC failed to identify legitimate, nondiscriminatory reasons for not hiring her for the PA2 position. Drummond claimed Palmer did not satisfy the minimum requirements for the position and alleged there were genuine issues of material fact regarding why Palmer was interviewed and offered the position, and whether ODRC's proffered reasons were pretext for discrimination.

{¶ 7} The Court of Claims granted ODRC's motion for summary judgment. The court concluded Drummond established a prima facie case of race and age discrimination, and ODRC presented a legitimate, nondiscriminatory reason for hiring Palmer instead of Drummond—i.e., because Palmer performed best in the interview process. The court further concluded Drummond failed to establish that ODRC's proffered reason for hiring Palmer was pretext for race or age discrimination.

{¶ 8} Drummond timely appealed the judgment of the Court of Claims.

## II.  ASSIGNMENT OF ERROR

{¶ 9} Drummond assigns the following as trial court error:

> The Trial Court erred in granting summary judgment on Appellant's age and race discrimination claims because the evidence demonstrates that the Ohio Department of Rehabilitation & Correction[']s reasons for not promoting Appellant to the position of Program Administrator 2 are pretextual as Appellant was plainly superior to the successful applicant for the PA2 position.

## III.  STANDARD OF REVIEW

{¶ 10} Under Civ.R. 56(C), summary judgment is appropriate when the moving party demonstrates "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is averse to the party against whom the motion for summary judgment is made." *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court

of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11.  If the moving party meets its burden, the non-moving party must set forth specific facts establishing a genuine issue for trial.  *Id.*

{¶ 11} "Appellate review of a trial court's ruling on a motion for summary judgment is de novo." *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 12.  We conduct an independent review without deference to the trial court's decision.  *Id.* "In reviewing a motion for summary judgment, we must construe all evidence in a light in favor to the non-moving party." *Id.* at ¶ 13.

## IV.  LEGAL ANALYSIS

{¶ 12} In her sole assignment of error, Drummond asserts the Court of Claims erred by granting summary judgment on her claims for race and age discrimination.  Under Ohio law, it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, * * * age, or ancestry of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  R.C. 4112.02(A).  Additionally, "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."  R.C. 4112.14(A).  Generally, " ' "Ohio courts examine state employment discrimination claims under federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e." ' "[4] *Ceglia v. Youngstown State Univ.*, 10th Dist. No. 14AP-864, 2015-Ohio-2125, ¶ 14, quoting *Morrissette v. DFS Servs., LLC*, 10th Dist. No. 12AP-611, 2013-Ohio-4336, ¶ 14, quoting *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 10.

---

[4] Notwithstanding this general principle, we note the Supreme Court of Ohio has held we are not bound to apply federal decisions interpreting federal statutes when evaluating analogous Ohio statutes. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 31.

### A. The *McDonnell Douglas* burden-shifting framework for establishing discrimination through indirect evidence

{¶ 13} A plaintiff must prove discriminatory intent to prevail on a race or age discrimination claim. *Grubach v. Univ. of Akron*, 10th Dist. No. 19AP-283, 2020-Ohio-3467, ¶ 50 (age discrimination); *Kenner v. Grant/Riverside Med. Care Found.*, 10th Dist. No. 15AP-982, 2017-Ohio-1349, ¶ 26 (race discrimination). Absent direct evidence, a plaintiff may establish discriminatory intent through indirect evidence under the three-step, burden-shifting analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] *Grubach* at ¶ 50; *Kenner* at ¶ 26.

{¶ 14} The first step of the *McDonnell Douglas* framework[6] requires a plaintiff to establish a prima facie case of discrimination. *Id.* at ¶ 27. To establish a prima facie case of race discrimination based on failure to hire or promote, "a plaintiff must demonstrate: '(1) membership in a protected class; (2) adverse employment action; (3) qualification for the position lost or not gained; and (4) the position remained open or was filled by a person not of the protected class.' " *Love v. Columbus*, 10th Dist. No. 20AP-41, 2021-Ohio-3494, ¶ 18 fn. 2, quoting *Janiszewski v. Belmont Career Ctr.*, 7th Dist. No. 16 BE 0009, 2017-Ohio-855, ¶ 54. Similarly, to establish a prima facie case of age discrimination based on failure to hire or promote, the employee must show that she (1) is a member of the protected class, (2) was qualified and applied for the position, (3) was denied the position despite her qualifications, and (4) the employer filled the position with someone who is younger. *Ceglia* at ¶ 24. "Establishing a prima facie case 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

---

[5] The Supreme Court adopted use of the *McDonnell Douglas* framework for race discrimination claims under Ohio law in *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192 (1981). *Kenner* at ¶ 26. The court subsequently adopted use of the *McDonnell Douglas* framework for age discrimination claims under Ohio law in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983). *Grubach* at ¶ 50. The court later modified the *McDonnell Douglas* analysis for age discrimination claims, holding that a plaintiff must show that the employer favored someone "substantially younger," rather than someone under age 40. *Coryell v. Bank One Trust Co., N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 14-20.

[6] The *McDonnell Douglas* burden-shifting framework was subsequently modified in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir.2008). Accordingly, we have sometimes referred to it as the "*McDonnell Douglas/Burdine*" framework. *See, e.g., Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 47 (10th Dist.).

**{¶ 15}** If a plaintiff establishes a prima facie case of discrimination, the second step of the *McDonnell Douglas* framework shifts the burden to the employer "to rebut the presumption of discrimination by presenting evidence of some legitimate, nondiscriminatory reason for its action." *Kenner* at ¶ 28. This is a burden of production, not persuasion, and is satisfied if the employer " 'introduce[s] evidence which *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.' " (Emphasis sic.) *Id.*, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the employer articulates a legitimate, nondiscriminatory reason, 'the presumption created by the prima facie case drops from the case because the employer's evidence has rebutted the presumption of discrimination.' " *Id.*, quoting *Williams* at ¶ 12. "However, if the employer fails to meet its burden of production and 'reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case,' then the question of whether the employer discriminated must be decided by the fact finder." (Emphasis sic.) *Williams* at ¶ 13, quoting *St. Mary's* at 509-10.

**{¶ 16}** If the employer carries its burden of demonstrating a legitimate, nondiscriminatory reason, the third step of the *McDonnell Douglas* framework shifts the burden back to the plaintiff to "demonstrate, by a preponderance of the evidence, that the reason the employer offered for taking the adverse employment action is actually a pretext for discrimination." *Kenner* at ¶ 29. "A plaintiff may establish that the employer's proffered reason for [an] adverse employment action is a pretext for discrimination by demonstrating that the stated reason had no basis in fact, the reason offered was not the actual reason for the employment action, or that the reason offered was insufficient to explain the employer's action." *Tanksley v. Howell,* 10th Dist. No. 19AP-504, 2020-Ohio-4278, ¶ 23. "Regardless of which option is chosen, the plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him." *Knepper* at ¶ 12. At this step, the plaintiff's burden merges with the ultimate burden of persuasion and he must show " 'both that the [employer's] reason was false, *and* that discrimination was the real reason.' " (Emphasis sic.) *Kenner* at ¶ 30, quoting *St. Mary's* at 515.

**B. Application of *McDonnell Douglas* framework to Drummond's race and age discrimination claims**

{¶ 17} Drummond has not presented direct evidence of race or age discrimination; because she relies on indirect evidence, we will analyze her claims under the *McDonnell Douglas* framework.

**1. First step of *McDonnell Douglas*—whether Drummond can establish a prima facie case of race and age discrimination**

{¶ 18} To establish a prima facie case of discrimination, Drummond must demonstrate that she (1) is a member of the protected class, (2) was qualified for and applied for the position, (3) was not hired for the position despite her qualifications, and (4) the position remained open or was filled by someone outside the protected class. *See Love* at ¶ 18, fn. 2; *Ceglia* at ¶ 24. Drummond is African American and was 55 years old in July 2018; therefore, she is a member of protected race and age classes. ODRC does not dispute that Drummond was qualified for the PA2 position. Drummond's qualifications for the PA2 position are further established by the fact that she temporarily filled the position until Palmer returned from maternity leave. Despite those qualifications, Drummond was not hired. ODRC instead hired Palmer, a white woman who was substantially younger than Drummond.[7] *See Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 20 (applying "substantially younger" standard in age discrimination claim to determine whether the employer hired or retained someone outside the protected class). Therefore, Drummond has established a prima facie case of race and age discrimination.

**2. Second step of *McDonnell Douglas*—whether ODRC can establish a legitimate, nondiscriminatory reason for not hiring Drummond**

{¶ 19} Because Drummond established a prima facie case of race and age discrimination, the burden shifts to ODRC to present evidence of a legitimate, nondiscriminatory reason for hiring Palmer instead of Drummond. *Kenner* at ¶ 28. ODRC asserts Palmer was hired because the members of the interview panel deemed her the most suitable candidate based on her interview. The recommendation form submitted to Warden Bowen indicated the interview panel members recommended Palmer based on her

---

[7] Palmer's exact age was not established in the record. Drummond asserted on information and belief in her complaint that Palmer was 33 years old as of July 2018. ODRC admitted that allegation in its answer to the complaint. ODRC has not disputed that Palmer was substantially younger than Drummond for purposes of Drummond's age discrimination claim.

experience and education. That experience included employment with ODRC and with a private corrections agency. The panel noted that at the private agency, Palmer "acted as liaison between the organization, contractors, and community, implemented polices & procedures, maintained [American Correctional Association] files, and developed & trained staff on policy and post orders." (Ex. 4, attached to the Compl.) According to Lipperman, the interview panel members agreed that Palmer "did outstanding on her interview." (Lipperman Dep. at 126.) By contrast, Hammond felt that Drummond "struggled to answer questions" during her interview and seemed unfamiliar with certain acronyms related to the duties of the PA2 position. (Hammond Dep. at 55.) Selecting the better candidate based on experience and interview performance is a legitimate, nondiscriminatory reason for a hiring or promotion decision. *See, e.g., Toledo v. Jackson*, 207 F.Appx. 536, 537 (6th Cir.2006) ("HUD then articulated a legitimate, non-discriminatory reason for its decision to hire Schneller, namely that Schneller interviewed better and had better academic credentials than Toledo."); *Hickman v. Dayton*, 39 F.Appx. 243, 245 (6th Cir.2002) (noting trial court finding that poor interview performance was a legitimate, nondiscriminatory reason for failing to promote an employee). Accordingly, ODRC met its burden under the second step of the *McDonnell Douglas* framework.

### 3. Third step of *McDonnell Douglas*–whether Drummond can demonstrate that ODRC's proffered legitimate, nondiscriminatory reason is pretext for discrimination

{¶ 20} Because ODRC established a legitimate, nondiscriminatory reason for not hiring Drummond, the burden shifts back to Drummond to "demonstrate, by a preponderance of the evidence, that the reason the employer offered for taking the adverse employment action is actually a pretext for discrimination." *Kenner* at ¶ 29.

{¶ 21} Drummond argues ODRC's proffered reason for hiring Palmer is pretext for intentional discrimination because Palmer did not meet the minimum qualifications for the position. Drummond further asserts she was the plainly superior candidate because she met the minimum qualifications and Palmer did not. Citing our decision in *Ceglia*, Drummond asserts there were triable issues of fact as to the existence of pretext based on their relative qualifications for the PA2 position.

### a. Analysis of relative qualifications in *Ceglia*

{¶ 22} The plaintiff in *Ceglia* was a part-time university instructor who asserted age and disability discrimination claims after he was not hired for a full-time instructor position. *Ceglia* at ¶ 9. The university asserted several nondiscriminatory reasons for not offering the plaintiff the position, including claims of improper conduct in his role as a part-time instructor. *Id.* at ¶ 26. The Court of Claims granted summary judgment in favor of the university, holding that the members of the university search committee honestly believed in the proffered nondiscriminatory reasons for not offering the position to the plaintiff. *Id.*

{¶ 23} On appeal, this court reversed the grant of summary judgment on the age discrimination claim, finding there were genuine issues of material fact. *Id.* at ¶ 49. We held that " '[r]elative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified * * * if not better qualified than the successful applicant, and the record contains "other probative evidence of discrimination." ' " *Id.* at ¶ 37, quoting *Bartlett v. Gates*, 421 F.Appx. 485, 490-91 (6th Cir.2010), quoting *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627-28 (6th Cir.2006). When reviewing the relative qualifications of candidates "to determine if there are triable issues of fact as to pretext, the question is whether the evidence supports the conclusion that [plaintiff] was 'as qualified * * * if not better qualified' than [the individual who was hired]." *Id.* ¶ 39, quoting *Bartlett* at 491. We found the plaintiff in *Ceglia* demonstrated a genuine issue of fact whether he was as qualified if not better qualified than the hired individual and that the hiring decision was "based, in large part, on the individual committee member's subjective belief that [the hired individual] was a superior candidate to [plaintiff] rather than on specific objective evidence." *Id.* at ¶ 42.

{¶ 24} We further held that in addition to producing evidence he was as qualified as the hired individual, the plaintiff was "required to produce 'other probative evidence of age discrimination.' " *Id.* at ¶ 43, quoting *Bartlett*; *Bender*; *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir.2011). The plaintiff in *Ceglia* satisfied that burden by establishing that one of the hiring committee members indicated they were seeking candidates for the position who were "mid-career" and "had not 'been around for a long

time,' " because those comments, if believed, constituted other probative evidence of pretext. *Id*. at ¶ 44.

### b. Relative qualifications of Palmer and Drummond for the PA2 position

{¶ 25} Drummond asserts Palmer did not satisfy the minimum qualifications for the PA2 position, claiming Palmer lacked the education and experience required for the position. The PA2 position posting set forth the following qualifications:

> Completion of undergraduate core program in business administration, management science or public administration; 2 yrs. trg. or 2 yrs. exp. in supervisory, administrative &/or managerial position.
> - Or completion of undergraduate core program in academic field commensurate with program area to be assigned per approved Position Description on file; 2 yrs. trg. or 2 yrs. exp. in supervisory, administrative &/or managerial position or staff position involving planning, research &/or policy/procedure development.
> - Or 4 yrs. trg. or 4 yrs. exp. in business administration management science or public administration.
> - Or 1 yr. exp. as Program Administrator 1, 63122.
> - Or equivalent of Minimum Class Qualifications for Employment noted above.

(Ex. 2, attached to the Compl.) Palmer, who had a bachelor's degree in sociology, indicated on her application that she had completed an undergraduate core program or undergraduate degree in business administration, management science, or public administration. Palmer believed sociology fit within public administration. Palmer also indicated in her application that she had 24 months or more of training or experience in a supervisory, administrative, or management position, or in a staff position involving planning, research or policy, and procedure development. Drummond asserts Palmer's undergraduate degree did not satisfy the minimum requirements; she also asserts Palmer had only one year of supervisory experience.

{¶ 26} Lipperman and Kimberly Freeman, a Human Capital Management Senior Analyst, conducted the initial screening of applications to verify minimum qualifications. One of the initial screeners concluded Palmer did not meet the minimum qualifications and should not be interviewed, while the other screener concluded Palmer satisfied the minimum qualifications. Because of the dispute, Kimberly Fullen, Human Capital Management Manager for ODRC's Bureau of Personnel, reviewed Palmer's application and

determined she met the minimum qualifications for the PA2 position. Drummond asserts ODRC failed to explain the difference of opinion about Palmer's qualifications and how it was determined that Palmer met the minimum qualifications. Drummond argues this creates a genuine issue of material fact as to whether ODRC's proffered reason for hiring Palmer was pretext for discrimination.

{¶ 27} To support her claim of pretext, Drummond must establish that (1) she was a plainly superior candidate or (2) she was as qualified, if not more, than Palmer *and* there was other probative evidence of discrimination. *Ceglia* at ¶ 37.

1.  **Whether Drummond was equally qualified and demonstrated other probative evidence of discrimination**

{¶ 28} We first consider whether Drummond established she was equally qualified with Palmer and there was other probative evidence of discrimination. "[D]iscriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir.2009). Thus, in *Ceglia*, we found there was other probative evidence of discrimination because a member of the hiring committee stated the committee was focused on " 'mid-career' candidates." *Ceglia* at ¶ 43. *See also Byrnes v. LCI Communications Holdings*, 77 Ohio St.3d 125, 130 (1996) ("Age-related comments referring directly to the worker may support an inference of age discrimination.").

{¶ 29} Unlike the facts in *Ceglia*, in the present case Drummond failed to demonstrate any "other probative evidence" of race or age discrimination. In her deposition, Drummond alleged that Hammond, Horton, and Lipperman discriminated against her because of race. Drummond admitted, however, that none of them said anything to her that suggested a racial bias. Instead, Drummond relied on her general feelings and the panel members' alleged familiarity with Palmer:

> Q. Okay. Do you believe Ms. Hammond discriminated against you because you're African-American?
>
> A. I can't say that she did not. Just because she's black doesn't mean she wouldn't discriminate against me because I am.
>
> Q. Sure. But do you have any reason to believe that she actually did?

A. I do partly feel that she did. Because I feel that she didn't think that I would act on it or that I would feel strongly about it.

Q. So why do you think she discriminated against you because you're African-American? Did she say something to you?

A. No, she did not. Because the fact that I'm African-American and she's African-American, that would not make a difference to her personally. I don't know her personally.

Q. But you think that your race played a part in her decision?

A. I think that my race, my current position, the fact that I believe she already knew [Palmer] and that maybe it wasn't all her decision. I believe there were many factors that played into it.

* * *

Q. Okay. Do you believe that Mr. Horton discriminated against you because you're African-American?

A. I do.

Q. Why?

A. Because I just believe because he felt that he could and that it was fine for him to do so.

Q. But why do you think that he did?

A. That is what I feel. I feel that he believes because he's a white male that he can -- that he could do that and that it was fine, part of his arrogance and he felt he could do it.

Q. Did he ever say anything to you that indicated he was taking your race into account?

A. No. He -- no, he did not. He wouldn't have said it to me directly.

Q. So what -- other than -- setting aside the fact that you believe that he felt he could, why are you -- why do you think that he did?

A. I think that he did just because he felt she was more entitled to it for whatever reason. Because she's a white female was one of the reasons.

Q. What do you think the other reasons were?

A. Because he's friends with her at the facility.

* * *

Q. Okay.  Do you think that Mr. Lipperman discriminated against you because you're African-American?

A. Yes, I do.

Q. Why?

A. Because he felt that he could, being a white male.

Q. Did he say anything to you that led you to believe he was taking your race into account?

A. He did not.

Q. So you're -- you believe that he discriminated against you because he's a white male?

A. Well, that, and also I just feel like I believe that they felt as -- a sense of entitlement that [Palmer] should have the position over me because she's a white female.  And thinking that it didn't matter, you know, they would select her because they could and chose to do so.

(Drummond Dep. at 51-55.)  Drummond acknowledged in her deposition that Warden Bowen was the ultimate decisionmaker.  Drummond denied that Warden Bowen discriminated against her because of race.

{¶ 30} Regarding her age discrimination claim, Drummond likewise failed to demonstrate any specific evidence of discrimination:

Q. Okay.  And do you believe that Ms. Hammond discriminated against you because of your age?

A. I do.

Q. Why?

A. Well, I just believe that she along with Horton and Lipperman feel that, well, I'm older, I've been there for a while, that maybe I should move aside and let somebody else have the job.  Because [Palmer] is younger, just starting out with her family, and maybe they felt like she was more deserving of the position.  I mean, I've been in my position for a while, my pay has increased significantly in comparison to [Palmer's], and maybe that's what they were thinking.  I mean, I don't know specifically what their thoughts were, but that is what I believe.

Q. Okay.  Did Ms. Hammond or Mr. Horton or Mr. Lipperman say anything to you to indicate that's what they were thinking?

A. No.  But they wouldn't have said anything to me like that.

Q. Did they say anything --

A. It's just my --

Q. -- to anyone else?

A. No, not that I'm aware of.

Q. So why do you think they were -- they wanted to offer the job the [Palmer] because she was younger?

A. Because that's just my belief of why.

(Drummond Dep. at 57-58.) Drummond asserted she did not believe Warden Bowen discriminated against her because of age, but claimed he simply let Horton make the decision because Horton would be supervising the PA2 position.

{¶ 31} Drummond asserted Hammond may have favored Palmer because of a prior working relationship, speculating they may have worked together at Corrections Corporation of America. Similarly, Drummond claimed Horton favored Palmer because he was "friends with her at the facility." (Drummond Dep. at 53.) As the trial court noted, however, an employer may rely on familiarity and personal relationships with a job candidate, so long as it does not arise from an impermissible classification. *See McDaniels v. Plymouth-Canton Community School*, 755 F.Appx. 461, 470 (6th Cir.2018) ("An employer may also make hiring decisions based on its familiarity and personal relationships with candidates. If candidates are selected because they have personal relationships or significant past involvement with the employer, the use of those criteria equally disqualifies men and women who lack said personal relationships and past involvement. Its use therefore does not discriminate on the basis of gender."); *Morris v. Shinseki*, 18 F.Supp.3d 923, 934 (S.D.Ohio 2014) ("[T]he mere fact that someone is promoted based upon a friendship is not evidence of race discrimination.").

{¶ 32} Drummond failed to demonstrate any specific evidence of race or age discrimination by the members of the interview panel, beyond her vague general feeling that they discriminated against her. A plaintiff must demonstrate pretext with " 'actual evidence, not just conclusory, self-serving statements.' " *Love* at ¶ 26, quoting *Stembridge v. Summit Academy Mgt.*, 9th Dist. No. 23083, 2006-Ohio-4076, ¶ 24. *See also Boggs v. Scotts Co.*, 10th Dist. No. 04AP-425, 2005-Ohio-1264, ¶ 25 ("[A]ppellant presented no evidence of discriminatory intent, but relied instead upon generalizations, conclusory statements, and her own subject beliefs, none of which are sufficient to support a finding of discrimination or retaliation such that appellant could show the requisite causal link."). Because Drummond failed to establish other probative evidence of race or age

discrimination, she cannot demonstrate a genuine issue of material fact whether ODRC's proffered reason was pretext for discrimination based solely on her claim of being equally qualified with Palmer.

### 2. Whether Drummond was a plainly superior candidate

{¶ 33} Because Drummond failed to demonstrate other probative evidence of discrimination, we must consider whether she was a plainly superior candidate to Palmer. "[I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender* at 627. "[E]vidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." *Id.* When making this determination, courts are not a " 'super personnel department,' overseeing and second guessing employers' business decisions." *Id.*, quoting *Verniero v. Air Force Academy School Dist. No. 20*, 705 F.2d 388, 390 (10th Cir.1983). *See also Mittler v. OhioHealth Corp.*, 10th Dist. No. 12AP-119, 2013-Ohio-1634, ¶ 52 ("Courts are not to judge whether an employer made the best or fairest decision, but to determine whether the decision would not have been made but for discrimination on the basis of age.").

{¶ 34} Drummond had a substantially longer tenure with ODRC than Palmer, having begun as Correctional Officer in 1997. For more than a decade before applying to the PA2 position, Drummond had been employed as a Correctional Lieutenant at the Ohio State Penitentiary, beginning that role in December 2007. During her time as a Correctional Lieutenant, Drummond was assigned to an administrative role with the northeast regional office for approximately six months from November 2015 through March 2016. Drummond also served in administrative roles at the Ohio State Penitentiary from July 1999 through December 2007. Drummond claimed at her deposition that she gained audit experience that was relevant to the PA2 position while working in these administrative roles. At her deposition, Drummond claimed she had "21 years of audit experience," asserting that "every year [she] would help with the audit." (Drummond Dep. at 22, 24.) In her written application for the PA2 position, however, Drummond asserted

she had "over 10 years experience in various aspects of the A[merican] C[orrectional] A[ssociation] Process." (Ex. 1, attached to Compl.) Thus, although Drummond claimed to have extensive audit experience, the details and depth of that experience were unclear.

{¶ 35} Palmer began working in corrections in 2012, as a Recreation Coordinator with Corrections Corporation of America. She served in various roles with Corrections Corporation of America, including Corrections Officer, Recreation Coordinator, and Staff Liaison through 2016. Notably, Palmer's application for the PA2 position stated she had assisted with the activation of multiple new facilities while working for Corrections Corporation of America. Palmer began working for ODRC in November 2016 as a General Activities Therapist 2 at the Ohio State Penitentiary. In her application, Palmer indicated she gained administrative experience in her role as Staff Liaison at Corrections Corporation of America, and had experience preparing, planning, and implementing policies and procedures, including American Correctional Association procedures.

{¶ 36} Considering Drummond and Palmer's relative qualifications, "a reasonable decisionmaker could make a plausible case" for selecting either one for the PA2 position. *Bender* at 628. Drummond had greater experience with ODRC, although the bulk of her recent experience was in a direct custodial role as a Correctional Lieutenant. Palmer had experience with both public and private correctional entities, including experience with newly activated facilities.

{¶ 37} "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, than clearly one candidate's qualifications are not significantly better than the other's." *Bender* at 628. Based on our review of the evidence related to Drummond and Palmer's qualifications for the PA2 position, we cannot conclude that Drummond's qualifications were so significantly better than Palmer's that "no reasonable employer would have chosen" Palmer over Drummond. *Bender* at 627. Therefore, Drummond fails to establish that ODRC's proffered reason for hiring Palmer was pretext for race or age discrimination.

{¶ 38} Because Drummond cannot demonstrate that ODRC's proffered reason for hiring Palmer was pretext for race or age discrimination, she cannot satisfy the third step of the *McDonnell Douglas* framework. Accordingly, we conclude the trial court did not err

by granting summary judgment in favor of ODRC on Drummond's claims for race and age discrimination, and we overrule Drummond's sole assignment of error.

## V. CONCLUSION

{¶ 39} For the foregoing reasons, we overrule Drummond's sole assignment of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

JAMISON and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

————————